### G. E. MORRISON v. THE STATE.

#### No. 1663. Decided May 3, 1899.

**1. Murder by Administration of Poison—Indictment.**

It is not necessary, in an indictment for murder by administration of poison, to allege that the act was unlawfully done.

**2. Same.**

It is not necessary in an indictment for murder by administration of poison, to allege that the poison administered was in quantities sufficient to produce death. Nor is it necessary for the indictment to allege how much of the poison was taken.

**3. Defendant's Letters—Demand for an Inspection of Before Trial.**

Before going to trial defendant moved the court to compel the prosecution to produce and file certain letters written by him which were claimed to be incriminative evidence against him. Held, there is no law compelling the prosecution to disclose to defendant before trial the character and kind of evidence it has and proposes to use against him.

**4. Withdrawal of Announcement of Ready for Trial—Surprise.**

On a trial for murder, after the trial had proceeded for one day, a State's witness appeared who was in possession of incriminative letters written by defendant, whereupon defendant moved the court to permit him to withdraw his announcement of ready for trial, because the appearance of said witness with the letters was calculated to surprise and injure him, which motion was overruled. Held, no error. There were no elements of surprise shown by the motion, and especially so when there was nothing to indicate that defendant could have disproved said letters or explained their criminative features if granted a postponement or continuance.

5. Letters as Evidence.

Where it appeared that defendant had written a number of incriminative letters to a witness, which the said witness produced, it was no objection to their introduction in evidence that they did not contain all the correspondence between the parties, where the record does not indicate that there were any other letters, and where defendant was afforded a full opportunity to cross-examine the witness as to the entire correspondence.

6. Same.

It is no valid objection to the introduction of defendant's letters in evidence that counsel for defendant "were so occupied" at the time that "they could not look into them to properly meet and explain them."

7. Juror—Conscientious Scruples—Circumstantial Evidence.

On the examination of jurors to test their qualifications, after they had stated that they had conscientious scruples against the infliction of the death penalty in cases of circumstantial evidence, it was competent for the court, by way of further examination, to explain and state to them a hypothetical case illustrative of circumstantial evidence, and if defendant's counsel thought the hypothetical case stated by the court was an extreme one, it was their duty to cross-examine the juror, and embody the facts shown by such examination in a bill of exceptions for the consideration of the court on appeal.

8. Juror—Formed Opinion.

Where a juror on his examination states that he has formed an opinion as to the guilt of defendant simply from rumor and newspaper accounts, but that if taken upon the jury, and the evidence should be different, he could entirely disregard his formed opinion and try the case exclusively upon the evidence adduced on the trial, Held, the juror was competent.

9. Jurors—Peremptory Challenges.

Where, after defendant had exhausted his peremptory challenges, but one other juror was impaneled, and he was accepted by defendant without objection, defendant shows no cause for complaint.

10. Evidence—Acts and Declarations of Deceased as to Mental and Physical Condition.

Acts and declarations of deceased immediately before death, or on previous dates, as to mental or physical condition, are admissible when pertinent to the issue, and it is immaterial if said declarations refer to past events and conditions.

11. Murder—Evidence—Forged Deeds.

On the trial of a husband for the murder of his wife, as tending to show that his motive and intent was to get rid of his wife in order that he might marry another woman, it was competent for the State to introduce in evidence a certain deed which had been forged by defendant and conveyed land to him for the purpose of inducing the second woman to believe that he was a man of means and wealth. That said deed was forged subsequent to the death of his wife did not affect its admissibility as a potent circumstance to indicate the sedate and formed design which had actuated him in killing his wife.

12. Evidence—Motive and Intent.

Any evidence that goes to explain, illustrate, or prove motive for which a crime has been committed, is admissible.

13. Evidence—Forgery—Independent Crime—Motive—Charge Limiting, etc.

On a trial of a husband for the murder of his wife, his motive being to marry another woman of whom he was infatuated, it was competent, as going to his motive for the State to prove that a recommendation of defendant's character and standing, gotten up to be used in furtherance of his purpose to marry the other woman, was a forgery, the court in its charge having properly limited it to the purpose of showing defendant's motive in the murder.

14. Murder by Poison—Evidence of Nonexperts as to Deceased's Temper, Disposition, etc.

On a trial of a husband for the murder of his wife by the administration to her of poison, where the contention of the defendant was that she died from disease or suicide, it was competent for her neighbors and friends, who constantly as-

sociated with her to testify that deceased was apparently happy, contented, and joyful in disposition, and that she was not afflicted with any female disease. The evidence was relevant and material as to whether deceased came to her death by some character of violence.

**15. Same—Opinion of Witness as to Identity of Person Named in a Letter Written to Her by Defendant.**

On the trial of a husband for the murder of his wife, in order that he might marry another woman, it was competent for said other woman, as a witness, to testify that defendant had written her a letter, which was put in evidence, in which he alluded to one "Guy, and the death of Guy's wife," and to state in that connection that defendant had told her his cousin "Guy," whom she had known at school, was living in the same town with him, and that Guy's wife had died; and her statement that she understood that the "Guy" mentioned in the defendant's letter was his cousin Guy, was not objectionable as being opinion evidence.

**16. Medical Experts—Opinion—Evidence.**

Medical experts as to a death by poison may state their opinion upon the whole evidence, if they have heard it all, or upon a hypothetical statement which is in conformity with the whole evidence.

**17. Indictment—Name of Injured Party—Variance.**

Where the indictment for murder alleged the name of the deceased as Mrs. G. E. M., and the evidence showed her Christian name to be Minnie, this did not constitute a variance, where it was proven that deceased was generally known in the neighborhood as Mrs. G. E. M., as alleged in the indictment.

**18. Indictment—Murder by Administration of Poison—Evidence.**

Where the indictment alleged a death by the administration of poison to deceased, a conviction will be sustained upon evidence showing that defendant procured the poison and knowingly placed it where he intended the deceased should get it and where deceased did get it and take it under the impression that it was another medicine.

**19. Same—Special Instructions.**

On the trial of a husband for the murder of his wife by the administration of poison, it was not error to refuse a requested instruction to the effect that if deceased came to her death from natural causes, or was accidentally poisoned, or took the poison by her own hand with suicidal intent, defendant should be acquitted, when the court had already charged the jury, "If you have a reasonable doubt as to whether defendant poisoned his wife with strychnine, with intent to kill her, as charged in the indictment, and if you have such doubt as to whether defendant with intent to kill her placed strychnine poison where he knew or believed deceased might take it, or if you have a doubt as to whether deceased committed suicide or died from other causes than poison administered by defendant with intent to kill her, you will acquit defendant." This given charge was all that defendant could ask in this respect.

**20. Same.**

It is not error to refuse special requested instructions where the same are all, so far as applicable, given in the main charge of the court.

**21. Improper Argument of Counsel—Practice on Appeal.**

Where improper argument is indulged in by the prosecuting attorney, it is essential, in order to have it revised on appeal, not only that exception should have been reserved, but defendant should also, in addition to the exception, have tendered a special instruction to the court telling the jury to disregard such improper statement or argument.

**22. Same.**

On a trial for murder, where the county attorney used the following language in his argument to the jury, viz: "Gentlemen of the jury, they talk about defendant having his throat treated. In my opinion his throat needs one more application, and that is about twenty feet of rope." Held, no error upon the facts of the case.

**23. Reading Authorities to Jury.**

Before attorneys for defendant had made their argument, the prosecuting attorney handed them a slip of paper containing the list of authorities from which he ex-

pected to read in his argument before the court. Afterwards, when the prosecuting officer proposed to read one of said authorities, defendant's counsel objected that the court permitted it, upon the ground that they had no opportunity to reply to same. Held, the matter of argument of a case is largely in the discretion of the trial court, and in this instance this discretion does not appear to have been abused.

**24. Bill of Exceptions—Modification and Qualification of by Judge.**

The trial judge can indorse his qualification of an exception upon the bill itself, and very properly explain the rulings excepted to when signing the bill. It is not necessary that he should draw up a separate bill of his own.

**25. Defendant's Failure to Testify—Charge.**

It is not error for the court to fail to charge the jury that they could not consider defendant's failure to testify in his own behalf as a circumstance against him. While it would not have been error for the court to have so charged, still it was not error for the court not to have so charged.

APPEAL from the District Court of Wilbarger on a change of venue from the District Court of Carson to the District Court of Hemphill, and from Hemphill, on account of lack of jurors, to Wilbarger. Tried below before Hon. G. A. BROWN.

Appeal from a conviction for murder in the first degree; penalty, death.

The indictment charged appellant with murdering Mrs. G. E. Morrison on the 15th of October, 1897, by mingling poison with medicine which he induced her to take and swallow.

The charging part of the indictment is set out in the opinion. A motion to quash the indictment was made upon the ground that it failed, in charging the offense to allege that it was "unlawfully" committed. Defendant also excepted to the sufficiency of the indictment: (1) generally; (2) that it failed to show that the act was unlawfully done; (3) it does not allege the poison administered was in quantity sufficient to produce death; (4) does not charge that defendant knew the drug was deadly either in its nature or quality; (5) does not allege the quantity or that it was given in amount sufficient to have caused death.

The motion and exceptions were overruled, and errors are assigned upon the ruling. A concise statement of the essential facts shown in evidence on the trial is given in the opinion below.

*Houston & Marum, Plemons & Veal,* and *Huff & Hall,* for appellant.— The court erred in not sustaining the motion to quash the indictment. The indictment should have used the statutory word "unlawfully." While the court has heretofore held this unnecessary, we insist that the indictment should use the term, because the court could not omit it in a charge defining murder. Crook v. State, 27 Texas Crim. App., 242; Pickens v. State, 13 Texas Crim. App., 353.

The indictment should state that the quantity of poison given was sufficient to produce death, and allege the quantity, and that the defendant knew that it was poison, and that it was administered in quantities sufficient to produce death.

The court erred in refusing to grant an order, compelling the prosecution to produce and file the letters asked for in defendant's motion to that

effect, as shown by the motion and by the bill of exceptions given at the time and numbered 1, because the defendant had the right to inspect the same before going to trial, so that he might take proper steps to prepare his defense.

The court erred in refusing to grant the defendant's motion to withdraw his announcement of ready for trial, for the reason set out in his motion. The appearance of said witnesses and the production of the letters after announcement of ready for trial and after proceeding with the case for one day, was calculated to surprise and injure the defendant, and did not give him the opportunity to prepare his defense which he was entitled to under the law.

The court erred in admitting in evidence the letters purporting to be from the defendant to Anna Whittlesey, because the same was not all the correspondence, as shown from the face of the letters themselves, but only part, and because defendant or his counsel were not given an opportunity to examine the same before trial as requested by them in their motion, and because he was for the first time confronted with them at the trial, and after the trial had progressed one day, and when they were so occupied they could not look into them and properly meet and explain them.

If the prosecution had and held in its possession letters on which it relied as evidence, or expected to use such letters as evidence, the court should have granted an order compelling them to be deposited with the clerk of the court for inspection by defendant and his counsel before announcing ready for trial.

On the presentation of the letters by the State as evidence the defendant excepted, because the letters as presented showed only a part of the correspondence, and because defendant had not been given due opportunity to examine them before trial, as he had requested in his motion. 1 Bish. Crim. Proc., secs. 959a, 959b; 3 Rice on Crim. Ev., sec. 31, p. 45.

When the State offered a portion of the letters of the defendant to Miss Whittlesey, it should have been compelled to produce all of said letters, or account for their absence, before giving in evidence the ones introduced. Greenl. on Ev., sec. 201.

The court erred in explaining to the veniremen what circumstantial evidence was, and the case given was an extreme one and calculated to mislead the jurymen, and in overruling the defendant's challenge for cause to Lisman and certain other jurors who answered they had conscientious scruples in regard to the infliction of the death penalty as a punishment for crime on circumstantial evidence.

Conscientious scruples regarding the infliction of the death penalty as a punishment on circumstantial evidence is a good challenge for cause on the part of the defendant, and one of which the defendant may avail himself. Clanton v. State, 13 Texas Crim. App., 152.

The case stated by the court was not one resting on circumstantial evidence alone, and would not require a charge on circumstantial evidence. Polk and Watts v. State, 35 Texas Crim. Rep., 495; Montgomery v. State, 20 S. W. Rep., 926; Adams v. State, 34 Texas Crim. Rep., 470.

The statement to the jurymen and the venire of a supposed case in order to remove the scruples of the veniremen, was calculated to prejudice the defendant, and would lead the jury to believe that the case at bar was analogous to the stated one in the mind of the court, and therefore one in which the death penalty could conscientiously be inflicted by such jurors in spite of their scruples on circumstantial evidence.

It is improper, and calculated at all times to prejudice the defendant, for the court at any stage of the proceedings to comment, illustrate, or argue with jury, witness, or attorney. It is not the province of the court to do more than find the facts, and he should do this without comment from himself. Code Crim. Proc., art. 767; Copeney v. State, 10 Texas Crim. App., 474; Crook v. State, 27 Texas Crim. App., 241; 1 Thomp. on Trials, secs. 218, 219.

The court should sustain a challenge for cause where the juror states that an opinion formed might influence him in his action. The juror should be able to state that such opinion would not influence him. Rothschild v. State, 7 Texas Crim. App., 540; Mfg. Co. v. Gray, 35 S. W. Rep., 32.

When a proposed juror answers that the opinion formed will influence him, then he should be stood aside. It is only when he answers that it will not influence him that further examination is required. Code Crim. Proc., art. 673, subdiv. 13; Spear v. State, 16 Texas Crim. App., 113; Rockhold v. State, 16 Texas Crim. App., 577; Shannon v. State, 34 Texas Crim. Rep., 5.

The right given to defendant to challenge peremptorily is a substantial one, guaranteed to him by the law, and the court can not deprive him of that right by refusing challenges for cause when legally made, and thereby compel him to exhaust his peremptory challenges on such proposed juror, even though "one juror was selected and impaneled after defendant exhausted his peremptory challenges and no objection was made by defendant or his counsel to said juror." If no challenges for cause could be made, certainly he could not peremptorily challenge such juror "after his peremptory challenges were exhausted."

The court erred in permitting Mrs. Hill and Mrs. Corhart to testify to declarations made by the deceased some time prior to her last sickness, to the effect that she was not troubled with her monthly periods and could not properly sympathize with those who were, and that she had no female troubles, and was regular in her monthly periods, and had never been so troubled; because the purported conversations were in the absence of the defendant, were hearsay, and no part of the res gestae.

In order to make declarations of a party concerning themselves admissible as part of the res gestae, it must appear that the complaint is not a recital of past conditions, nor a mere statement of present conditions, but that such statement or declaration was induced by the then physical conditions which seek expression through such statement, and not the party talking about the condition, but the conditions talking through the party. Hobbs v. State, 16 Texas Crim. App., 517; Fuller v.

State, 30 Texas Crim. App., 559; Green v. State, 8 Texas Crim. App., 71; Wheeler v. Railway, 43 S. W. Rep., 876; Railway v. Wheeler, 41 S. W. Rep., 517; Insurance Co. v. Mosley, 8 Wall., 397; 21 Am. and Eng. Enc. of Law, 104; Williams v. Railway, 37 L. R. A., 199; State v. Dart, 29 Conn., 153; same case, 76 Am. Dec., 596.

Expressions or declarations of a person afflicted with bodily pain or illness relative to his health and sensations are in their nature original evidence, such expressions being ordinarily the natural consequences and outward indications of coexisting suffering. The admissibility of evidence of this character depends upon whether the pain complained of is contemporaneous or coexisting with the declaration. If it be merely a narrative of a past condition, or even present conditions, and which is not the natural and spontaneous expression made from the then physical suffering or illness, such declarations are not admissible in evidence. Roger v. Crain, 30 Texas, 284; 1 Greenl. on Ev., sec. 102.

The court erred in admitting the evidence of W. M. Pugh and E. C. Gray, that the deed purporting to be from Robert B. Brogdie to George Edgar Morrison, bearing date at Higgins, June 20, 1890, and witnessed by Gentry Abbott, was forged, and that the signatures of the grantor and witness were both in the handwriting of defendant, because said evidence sought to prove defendant guilty of an independent crime, the acts were too remote, and, if committted, were after death of wife and could not prove motive or knowledge, and were immaterial and calculated to and did prejudice the jury against defendant.

The court erred in permitting H. S. Mugg, George Patterson, George Farlow, and E. C. Gray to testify that the recommendation of defendant, dated Higgins, October 20, 1897, purporting to be signed by said witnesses and others, as to some of said witnesses (who testified) the motive and purpose of said recommendation was misrepresented to them and others of said witnesses. Patterson and Farlow testified that their names were signed to same by some person other than themselves, and without their knowledge or consent, because by said evidence it was sought by the State to prove defendant guilty of an independent crime, and the said evidence was immaterial, irrelevant, and too remote to show motive or knowledge on part of defendant, and was calculated to and did prejudice the jury against the defendant.

Evidence of an independent crime is not, as a rule, admissible against the defendant, and should not be admitted, and to be admissible the evidence must clearly come within the exception, and when it is but a remote circumstance or not necessarily connected with facts or circumstances tending to prove knowledge or motive, the same should not be admitted. Williamson v. State, 13 Texas Crim. App., 514; Musgrove v. State, 28 Texas Crim. App., 57; Welhousen v. State, 30 Texas Crim. App., 623; Campbell v. State, 32 S. W. Rep., 774; Long v. State, 39 Texas Crim. Rep., 537.

The court erred in that portion of its charge to the jury wherein it seeks to limit certain evidence tending to prove forgery of the name of

certain persons to certain instruments, and wherein the court tells the jury that they might consider such evidence with other evidence, if any, in determining whether defendant killed the deceased as charged in the indictment, and if so, his motive in so doing. Because such charge is on the weight of the evidence, and if said evidence was admissible at all, it was only admissible to prove motive or knowledge on the part of the defendant, and not to prove that the defendant killed the deceased.

The evidence introduced could be admitted but for one purpose, and that was to prove motive. It was not admissible for the purpose of showing that defendant killed the deceased. Thornly v. State, 35 S. W. Rep., 981; McCall v. State. 14 Texas Crim. App., 362; Long v. State, 11 Texas Crim. App., 387; Welhousen v. State, 30 Texas Crim. App., 626.

If the testimony was introduced for the purpose, and its effect was to develop the res gestae, or was introduced as a fact to establish the case showing defendant's guilt, or that he killed the deceased, then the court should not have charged the jury as to the purpose of said evidence as a circumstance against defendant, and such a charge was likely to effect defendant injuriously, and was a charge upon the weight of the evidence. Thornley v. State, 34 S. W. Rep., 264; Thornley v. State, 36 Texas Crim. Rep., 118; Wilson v. State, 36 S. W. Rep., 587; Santee v. State, 37 S. W. Rep., 436; Berry v. State, 37 Texas Crim. Rep., 44.

The court erred in permitting the question to be asked by State's counsel of Miss Anna Whittlesey, "whom she understood the defendant to mean by 'Guy' in his letter of October 13, 1897," written to witness, and in permitting her to testify, "she understood him to mean his cousin Guy E. Morrison, the one she had known in Illinois at school;" because the question called for the opinion of the witness, and the answer given was the opinion and conclusion of the witness. The jury should have been left to draw their own conclusion. The witness formed her conclusion from the facts which she had detailed in evidence, and from the expression in the letter the jury were as competent to deduct the proper conclusion as the witness from the facts testified to, and the witness should not have been permitted to testify to her opinion so formed. Cooper v. State, 23 Texas, 335; Webb v. State, 24 Texas Crim. App., 164.

The court erred in permitting Dr. Walcott, Dr. W. E. Warner, Dr. Carter, Dr. S. M. Morris, and Dr. J. E. Dodson to testify that in their opinion the deceased died from strychnine poisoning, from the description of the symptoms detailed by the witnesses in their hearing, and from the evidence produced in their hearing, because they should have testified from a hypothetical case given them, and give their opinion on such a case, and describe the effects strychnine would have on the patient, and let the jury say whether the deceased was so poisoned.

An expert called to give his opinion as an expert must give one founded on his knowledge of the facts, or one founded on a hypothetical question, or case based on the facts of the case proven on the trial. But where there is conflict or the facts are incongruous, he should not invade the province of the jury by deciding what are the true symptoms of the pa-

tient, but each party should be permitted to submit a hypothesis according to the truth of the facts as they contend they are. Burt v. State, 38 Texas Crim. Rep., 444; Williams v. State, 37 Texas Crim. Rep., 347; Hunt v. State, 9 Texas Crim. App., 166; Cooper v. State, 23 Texas, 335; Armendiaz v. Stillman, 67 Texas, 458; Insurance Co. v. Dorgan, 22 L. R. A., 620, 623; Dexter v. Hall, 82 U. S., 9, 28; Foster v. Fidelity Co., 40 L. R. A., 833, 836; Greenl. on Ev., sec. 440; Lee v. Heuman, 32 S. W. Rep., 94; 1 Rice on Ev., p. 350, sec. 199, subdiv. a; 2 Whart. & S. Med. Jur., sec. 432.

The court erred in that portion of his charge wherein he tells the jury they can convict the defendant if he knowingly placed or laid strychnine where it might be taken by deceased, etc., for the reason that the indictment does not charge him with placing or laying the same where the deceased could get it, but that he administered it to her, and because the evidence did not authorize such a charge."

In connection with the above assignment defendant submits his eighteenth and nineteenth assignments as follows:

18. The court erred in refusing the following requested charge: "You are charged by the court that before you can convict the defendant of the offense charged you must believe, beyond a reasonable doubt, that the defendant administered poison to the deceased in one of the modes charged in the indictment; you can not convict if you shall find that the defendant did not so administer the same, but shall find that the same was placed or left so that the deceased got the same and took it," because not given in the main charge, and because the law applicable to the case.

19. The court erred in refusing to give the following requested instructions: "You are charged by the court that before you can convict the defendant of the offense charged you must believe, beyond a reasonable doubt, that the defendant administered poison to the deceased in one of the modes alleged in the indictment, and you can not convict if you shall find that the defendant did not so administer the same, and you will in such event acquit defendant," because applicable to the case, and not given in the main charge by the court.

The court erred in that part of its charge which attempts to apply the law to the defense of defendant, because the same does not submit a plain substantive charge, submitting the defense unmixed by the State's theory, but the same is vague, uncertain, and indefinite, and calculated to confuse the jury, and further requires the jury, before they find the defendant not guilty, to apply the rule of reasonable doubt as to whether the deceased came to her death by natural causes or by suicide, and to believe beyond a reasonable doubt that the deceased came to her death by one of these causes before they could acquit the defendant.

In order to warrant the jury to acquit, they did not have to find as a fact that deceased died from a natural cause or suicide, but they could acquit if the State failed to convince them beyond a reasonable doubt that defendant killed her.

40th Crim. Reps.—31

The court should not require the jury to believe the exculpatory facts beyond a reasonable doubt; and telling the jury they could acquit if they had a reasonable doubt whether deceased died from a natural cause, or such doubt as to whether she suicided, was virtually telling them they had to believe one or the other of said facts beyond a reasonable doubt before they could acquit. Dyson v. State, 13 Texas Crim. App., 402; Patterson v. State, 12 Texas Crim. App., 232; Rockholder v. State, 16 Texas Crim. App., 577.

Mr. Cowan, at the time and before Mr. Hall and Mr. Houston, attorneys for defendant, made their argument to the jury, handed them a slip of paper showing certain authorities from which he expected to read in his argument to the jury, among which was the ninth volume of American and English Encyclopaedia of Law, and the authority referred to, but did not hand them the book. Mr. Cowan stated, when defendant objected, that he desired to read the authority as part of the argument.

Defendant's ground of objections urged were that his counsel had not had an opportunity to answer the same, that it was not the law, and that the jury should not have the same read to them as the law, but should receive the law from the court in its charge to them, and that such was calculated to prejudice the rights of defendant. Dist. Court Rules, 36, 38, 39, 40; Laubach v. State, 12 Texas Crim. App., 592.

The law read by counsel is not the law in this State. The jury are not required to have a reasonable doubt from the evidence in order to acquit; they may have such doubt from lack of evidence. And for the court to permit such an extract to be read when objections were made to it before it was read on the ground that it was not the law, as well as after the reading, was calculated to impress the jury with the view that the court regarded it as the law and permitted it to be read because the law. Especially would this be so when counsel premised the reading by his statement that perhaps it would not be proper to charge it—yet it was the law. Abram v. State, 36 Texas Crim. Rep., 44; Johnson v. State, 30 Texas Crim. App., 419.

The court erred in failing to charge the jury that they could not consider as a circumstance against defendant the fact that he failed to testify in his own behalf, and that they should not discuss the fact of his failure to so testify. The court gave no such charge. Defendant did not testify in the case. Guinn v. State, 39 Texas Crim. Rep., 257; Unsell v. State, 39 Texas Crim. Rep., 330; Flucher v. State, 28 Texas Crim. App., 465.

*Matlock, Cowan & Burney* and *Robt. A. John,* Assistant Attorney-General, for the State.—The word "unlawfully" is not necessary to the validity of the indictment charging murder. Jackson v. State, 25 Texas Crim. App., 314.

As to the second proposition of appellant under first assignment of error, the State submits that the same is not the law, and that there are no authorities that can be cited to support the same, and under this proposi-

tion the State insists that the indictment is sufficient. Johnson v. State, 15 S. W. Rep., 648.

The prosecution can not be compelled to submit this evidence to the defendant's counsel simply for the purpose of discovering to them the criminative facts which the State may introduce.

Appellant contends that, the State having offered a portion of the letters of defendant to Miss Whittlesey, it should have been compelled to produce all of said letters or account for their absence before giving in evidence the ones introduced. The State submits that the rule is, that when a part of the correspondence or series of letters are introducd by one party that the other party is entitled to introduce the balance, but this must be done by an introduction of the original if in possession of the opposite party. If the balance of these letters were in possession of the State, it was the·duty of the appellant to give notice to the State to produce the same, and upon the State failing to produce same, appellant's remedy would have been to prove same by secondary evidence. This rule not having beeen complied with, the appellant can not complain.

Miss Whittlesey, the party to whom the balance of such correspondence was addressed, the absence of which is complained of by appellant, was upon the stand as a witness. The appellant failed to elicit from her the contents of the absent letters, and so far as the bill of exceptions shows, they never sought to prove contents of said letters by said witness. Code Crim. Proc., art.·751; Earley v. State, 9 Texas Crim. App., 476.

The court's explanation concerning the examination of the juror Lisman and others contains the following statement: "Without a single exception [the juror] stated that his conscientious scruples only in cases [depending on] wholly circumstantial evidence, and that if such evidence was strong enough that the person charged with a capital offense was guilty, they would have no scruples." We therefore say that the bill of exceptions with this qualification fails to show that the jury was disqualified.

The court's explanation further recites: "The juror Lisman was accepted by the defendant, and the second taken in the case." We therefore submit that defendant waived objection to this juror by failing to challenge him upon materiality.

The defendant can not avail himself of the disqualification of a juror in a capital offense on the ground that he has conscientious scruples in regard to inflicting the death penalty, whereupon the verdict, the death penalty, is assessed.

Jurors testifying on their voir dire examination that they could give a fair and impartial trial are competent, though they also testify that they had formed an opinion based on rumor and hearsay. Adams v. State, 35 Texas Crim. Rep., 285; Suit v. State, 30 Texas Crim. App., 319.

The defendant challenged the juror Vaughn and he was not taken on the jury. But one juryman was selected after the juryman Vaughn was challenged, and he was accepted without objection of the defendant or his counsel. Therefore, it is not shown by the bill that the defendant was

compelled to accept an objectionable juror, but it appears that the juror selected instead of Vaughn was entirely acceptable to defendant.

In a prosecution of murder, where the defense is that, if deceased was poisoned, it was taken with suicidal intent and not administered by defendant, the declarations of the deceased made on the day before her death tending to show that she did not contemplate suicide, and tending to show the mental condition of deceased, is admissible in evidence on behalf of the prosecution, and it is immaterial that such statements may contain recital of past conditions. 1 Roscoe's Crim. Ev., 31; 30 Texas, 284; 61 Texas, 95.

The court properly admitted in evidence the letters of appellant, his forgeries of the deeds, and recommendation of his character and standing.

It is competent to prove conduct or declarations of the accused which tend to establish his knowledge or which tend to show motive, although they in themselves constitute crime and are apparently collateral to the main issue, and they have occurred either prior or subsequent to the commission of the offense. See White's Ann. Pen. Code, sec. 1231, and authorities cited.

The charge of the court limiting the effect of the testimony as to the recommendation and deed is not a charge upon the weight of the evidence. It is limited to the purpose of showing whether the defendant killed his wife, and if so, his motive. But it is not essential that the evidence be limited except to caution the jury not to convict for such extraneous crime. Hudson's Case, 28 Texas Crim. App., 323.

It was not error to permit the witnesses, who were all acquainted with deceased, to testify that she was of a happy and a contented disposition; did not appear to be sick; had the appearance of a healthy woman. Any person well acquainted with another may testify as to whether the person appeared to be healthy or not, and also as to the temperament,—as to being happy or sad. 7 Am. and Eng. Enc. of Law, 498; Culver v. Dwight, 6 Gray, 444; 19 Am. Rep., 406; Whart. Crim. Ev., 460.

Replying to the eleventh assignment of error, we only have to say that, by reading the testimony of Miss Whittlesey and the letter in connection with the letter of defendant using the name of "Guy," it is perfectly apparent that it could not have had reference to any other person than to Guy Morrison, who the defendant had stated to Miss Whittlesey was residing in the Panhandle, and that his name was Guy E. Morrison, and that they frequently got their mail mixed. If error, it was immaterial; but we contend that it was perfectly legitimate under the circumstances for Miss Whittlesey to have stated what she understood from this recommendation in connection with her knowledge and correspondence as to who was referred to by the use of the name "Guy." The defendant, writing a letter, certainly believed that she would know who he meant, and as she trusted that she would understand who he meant, we think she was a competent witness to testify.

Medical experts may testify and give their opinions based upon hearing the witnesses testify to the symptoms.   Leech v. State, 22 Texas Crim. App., 279 ; Burt v. State, 38 Texas Crim. Rep., 444.

BROOKS, Judge.—Appellant was convicted of the murder of his wife by poisoning, and his punishment assessed at death.

We will briefly state the facts in the case :   During the year preceding the death of deceased, appellant resided at Panhandle, Carson County, and was engaged in preaching there two consecutive Sundays in each month, and one Sunday in each month at Canadian, some fifty miles from Panhandle, on the Southern Kansas Railroad, and one Sunday at Higgins, some twenty miles further on, being between seventy and eighty miles from Panhandle.   Appellant had been married to his wife about seventeen years, and had lived at different places, and at one time had lived in California, and at another time in Oklahoma Territory, from which last place he moved to Panhandle.   He was born and raised in Illinois, and went to school at Carbondale, and there became acquainted with the main prosecuting witness, Miss Anna Whittlesey, and went to school with her. Subsequently Miss Whittlesey moved, with her father and mother and brother-in-law, to Topeka, Kan., and resided there ten years previous to the death of the deceased.   Appellant, in August previous to the death of his wife in October, 1897, met Miss Whittlesey (his school-days' sweetheart) at Topeka, and made offers of marriage.   This offer of marriage occurred in August, at which time appellant pretended to Miss Whittlesey's brother-in-law, Norris, that his wife was dead, and had been dead eleven years ; that he had quit preaching on account of throat trouble, and had been engaged in the cattle business for eight years near Higgins, Texas, which was his postoffice.   He represented, also, that he was doing a thriving business, and made the same representations to Miss Whittlesey, and also stated to her that his cousin, Guy E. Morrison, whom Miss Whittlesey had known twenty years before at Carbondale, Ill., was married and lived at Panhandle, and that he was the Methodist preacher at that place.   The evidence discloses that this statement was wholly false. After appellant's engagement to Miss Whittlesey, he began a correspondence with her, urging his proposition of marriage, stating that he had intended for a number of years to come to her when he could do so honorably, and he believed he could now see the time.   This statement was made on September 10th (one month before the death of his wife).   In all of his letters to her he continuously represented himself as being in the cattle business, and a ranchman.   He made another visit to Topeka, after his first, and previous to the death of his wife, and while returning from there, on one occasion, talked to a doctor relative to the doses and effect of strychnine and quinine.   The death of the deceased was shown conclusively, by the testimony of experts, to have been caused from strychnine poison.   Appellant procured strychnine for the ostensible purpose of poisoning "varmints," which he said were catching his chickens ; and this was procured on Friday before his wife's death on Sunday.   On the day pre-

vious he had procured a box of quinine, with some empty capsules. On the Friday night before her death, deceased went to the Swiss Bell Ringers, leaving appellant at home. Appellant then had possession of the strychnine, which he had secured about supper time that evening. The next morning he took the strychnine back to the drug store, telling the druggist that he was afraid to use it for fear he would poison his neighbors' chickens. The druggist had not charged him anything for the strychnine, and opened the package and poured it back into the bottle, but did not notice whether any of it was gone; save and except that he noticed the string around the package was looser than it was when he let appellant have it. Sunday night appellant preached, and alluded in a pathetic manner to the parting with loved ones at death. About 10 o'clock Sunday night he called upon his neighbors for assistance, after announcing the serious illness of his wife. The neighbors responded promptly, and found her in paroxysms and spasms, evidently due to strychnine poison. He made a number of false statements in regard to the manner in which he had retired, and the like, and announced the fact that his wife had taken nothing except quinine, and he exhibited this quinine to most every one, with the announcement that there was nothing wrong with the quinine. The bed upon which deceased was resting was the only bed in the room, and it showed that no one had lain on it except deceased. The neighbors further testified that when they reached the house he was in full dress, and showed no evidence whatever of having retired for the night. Deceased died at 12:30 that night, and shortly after her death appellant made statements to the effect that her death was due to a complication of kidney disease and deranged menstruation, and also falsely stated that Dr. Warner, who had been sent for, and arrived after her death, had told him that deceased's death was due to blood poisoning as a result of kidney trouble, which statement appellant repeated by letter to his wife's kin people and several persons. In the meantime he kept up his correspondence with Miss Whittlesey, writing her a letter two days before the death of his wife, and the day after her burial, asserting his love in the most lavish terms, and announcing "the death of Guy's wife," and immediately after the death of the deceased notified her of his early contemplated visit to Topeka. About a week after deceased's death, Miss Whittlesey wrote him that her sister, Mrs. Norris, said that he might have a wife in Texas; in reply to which he announced his fear that Miss Whittlesey's people might separate them, and proposed to show recommendation papers to prove that all he told her was true; and in carrying out this deception he procured a map, and marked a ranch on it, and forged a recommendation as to his character, and that he had no family, and was engaged in the stock business, and also forged a deed to himself, which papers he presented to Miss Whittlesey about October 24th. These papers were found on his person when he was arrested on his return to Topeka after his wife's death. When appellant was arrested he was held a few days, was released, and fled; and about three months thereafter was rearrested in San Francisco. Prior to the

trial depositions were taken of Dr. and Mrs. Holland, residing in California, who testified that deceased had made statements to them indicating the desire to take her own life on account of distress arising from female derangement, which depositions were on file at the time of the trial. A medical analysis of the stomach of deceased was made about six weeks after her death, and showed strychnine; and the witnesses who saw her dying agonies all testify to the distinctive symptoms of strychnine poison. The motive for the killing, as contended by the prosecution, was in order that he might marry Miss Whittlesey, and obtain her money. These are substantially the main facts adduced, as disclosed by the record.

Appellant's first assignment of error is "that the court erred in overruling his motion to quash the indictment, for the reasons set out in the motion, as follows: (1) The acts and facts alleged against defendant, as alleged, are not sufficient to constitute an offense. (2) The indictment fails to show that the charge therein contained is alleged as a statutory offense, in that it fails to show that the act was unlawfully done. (3) Because the same charges no offense against the law of the State, in that it nowhere alleges that the poison charged to have been administered was in quantities sufficient to produce death. (4) The same nowhere charges that defendant knew that the drug charged to have been given deceased was deadly, either in nature or quantity. (5) Same nowhere alleges the quantity of said drug administered, or that the same was given in amount sufficient to have caused the death of the deceased." The charging part of the indictment is as follows: Defendant "did then and there, with malice aforethought, kill Mrs. G. E. Morrison, by poison, to wit, the said G. E. Morrison did then and there mingle and cause to be mingled certain poison, called 'strychnine,' with a certain medicine, called 'quinine,' with the intent then and there to injure and kill the said Mrs. G. E. Morrison, he, the said G. E. Morrison, then and there well knowing that the said Mrs. G. E. Morrison would take and swallow the said poisoned medicine, and then and there intended that the said Mrs. G. E. Morrison should do so; and the said Mrs. G. E. Morrison did then and there, not knowing that the said medicine was so poisoned, take and swallow the same, and the said Mrs. G. E. Morrison, of the poison aforesaid, so mingled in the said medicine as aforesaid, and by her swallowed as aforesaid, did, on or about the 10th day of October, A. D. 1897, in the county and State aforesaid, die. · And the grand jurors aforesaid, upon their oaths in said court, do further present that G. E. Morrison, on or about the 10th of October, 1897, in the county of Carson and State aforesaid, did with malice aforethought kill Mrs. G. E. Morrison, by then and there, with intent to injure and kill the said Mrs. G. E. Morrison, causing her, the said Mrs. G. E. Morrison, to take and swallow certain poison, called 'strychnine,' the manner and means used by the said G. E. Morrison to cause and induce the said Mrs. G. E. Morrison to take and swallow the said poison being to the grand jurors unknown, with the intent then and there to injure and kill the said Mrs. G. E. Morrison, the said G. E. Morrison well knowing that the said Mrs. G. E. Morrison would take and swallow the

said poison, and intending that she should do so; and the said Mrs. G. E. Morrison did then and there, not knowing that the same was poison, take and swallow the said poison, and the said Mrs. G. E. Morrison, of the poison so taken and swallowed by her as aforesaid, did, on or about the 10th of October, 1897, die," etc.

We think the indictment is in all things sufficient in this case. It is not necessary that the indictment should allege that the act was unlawfully done, nor is it necessary for it to allege that the poison charged to have been administered was in quantities sufficient to produce death. And furthermore, it is not necessary to allege that the drug charged to have been given was deadly, either in its nature or quantity. Neither was it necessary to allege how much of the strychnine was taken. See Calvin v. State, 25 Texas, 789; Thompson v. State, 36 Texas, 326; Bean v. State, 17 Texas Crim. App., 60; Stephens v. State, 20 Texas Crim. App., 255; Jackson v. State, 25 Texas Crim. App., 314.

Appellant's second assignment of error is "that the court erred in refusing to grant an order compelling the prosecution to produce and file the letters requested in his motion to that effect, because he had a right to inspect the same before going into the trial, so that he might take the proper steps to prepare his defense." It appears that, before the trial began, appellant was apprised of the fact that the prosecution was claiming to have possession of the letters alleged to have been written by appellant to Miss Anna Whittlesey, and which it was claimed were incriminative evidence against him. Upon the motion of appellant to compel the prosecution to show said letters, S. H. Cowan, one of State's counsel, testified that there were some letters, as mentioned in the motion, shown him, and that they were in the hands of one Steel, a witness for the State; that he saw them at the Canadian court, before the change of venue; that said Steel took the letters with him, and stated that he had promised Miss Whittlesey to not let them go out of his hands; and that, if Steel was now present, in attendance upon the court, he did not know it. It appeared that these letters, however, were produced upon the trial of the case; the witness Steel and Miss Anna Whittlesey appearing there in ample time to testify upon the trial. We know of no law compelling the prosecution to disclose the character and kind of evidence that it has against the defendant. Furthermore, it is not made to appear in the record before us in what way appellant's rights were injured, or that he was deprived of any substantial privilege. The evidence showed that all the letters were written by him. This being true, and uncontroverted, certainly he knew the contents of the letters, and could not claim any character or kind of surprise. If he could, the record does not disclose that he did claim any such surprise. We do not think the court erred in refusing to grant the motion, because at the time the same was made it could not be complied with; and besides, appellant had the full right of cross-examination as to these letters during the trial.

Appellant's third assignment of error complains of the action of the court "in refusing to permit appellant to withdraw his announcement of

ready for trial, for the reason set out in his motion, and as shown by bill number 4: * * * The appearance of said witness Steel, and the production of said letters after the announcement of ready for trial, and proceeding with the case for one day, was calculated to surprise and injure defendant, and did not give him an opportunity to prepare his defense, to which he was entitled." For the reason stated in the disposition of the second assignment above, we do not think the court erred in refusing to permit counsel to withdraw his announcement of ready. There are no elements of surprise shown by his motion, nor is there any evidence in the record before us to indicate that appellant has been deprived of any right whatever by the refusal of the court to permit his withdrawal of the announcement of ready. There is nothing shown to indicate that appellant would have disproved said letters, or that he would have been able on another occasion to have shown their falsity, or to have explained their criminative features.

Appellant's fourth assignment complains of the admission in evidence of letters purporting to be from defendant to Anna Whittlesey, as shown by bill number 11, "because the same was not all the correspondence, as shown from the face of the letters themselves, but only a part, and because defendant or his counsel were not given an opportunity to examine the same before trial, as requested by them in their motion, and because he was for the first time confronted with them at the trial, after the trial had progressed one day, and when they were so occupied that they could not look into them, to properly meet them and explain them." The record in this connection shows that appellant had written various and sundry letters to Anna Whittlesey; that she had sent him back his ring when he was arrested in Topeka, Kan., and received, at her request, in return, all of her letters to appellant, which letters she says she destroyed. If there were any other letters written by appellant to witness, there is nothing in the record to indicate it. The witness was on the stand, and appellant could have disclosed the fact, by cross-examination, that there were other letters, if he had so desired; or, if he desired to ask her anything about the letters which she had destroyed, he could have done so. There appearing no effort in this direction on the part of appellant, we hold that the mere fact of there being other letters would not be any reason or cause why the letters produced should not be introduced. If appellant could explain them by any evidence, this fact should have been made apparent, by motion or otherwise. It was not done, however. As to the suggestion made by appellant's counsel that they were introduced at a time "when they were so occupied they could not look into them to properly meet and explain them," this is an emergency that confronts attorneys in the defense of parties charged with crime; and it certainly is not a reason why this court should reverse the judgment. Evidently, the criminative features of these letters were much of a surprise to appellant's counsel; but the fact of surprise alone is not a ground for the postponement of the case or of the withdrawal of announcement of ready. Code Crim. Proc., art. 751; Early v. State, 9 Texas Crim. App., 476.

Appellant's fifth assignment of error is "that the court erred in explaining to the veniremen what circumstantial evidence was, and the case as given was an extreme one, and calculated to mislead the jury, and in overruling his challenge for cause to juror Lisman and certain other jurors, who answered they had conscientious scruples in regard to the infliction of the death penalty as a punishment for crime on circumstantial evidence, as shown by bill number 2." This bill shows: "That while the juror Lisman was being examined on his voir dire, as well as other jurors and veniremen, he, in answer to the question 'whether or not he had conscientious scruples in regard to the infliction of the death penalty as a punishment for crime,' stated he did, if the evidence was circumstantial. A challenge was made for cause. The court thereupon explained to the venireman, in the presence and hearing of the jurors selected, what was meant by 'circumstantial evidence.' The court said: 'I will state to you a circumstantial evidence case, which is not the case on trial, or like it. Suppose a man was seen going into a house, with a knife, where there was a lady, and after he got in there a cry of murder was heard, and the same man was then seen coming out of the house with a bloody knife, and that, on entering the house, the woman was immediately found murdered by a fresh knife wound; this would be circumstantial evidence.' The venireman then stated that under such a case he would not be opposed to the death penalty. The court then told him that was circumstantial evidence, and held the juror qualified. The court, to several of the jurors and veniremen who had answered they had conscientious scruples in regard to the infliction of the death penalty, asked them if they had heard his illustration given Lisman, and many of them, after answering that they had scruples on circumstantial evidence, would say they had none under such circumstances, and a number of them were so held qualified." The court added the following qualification: "That on examination this juror, and the others referred to in this bill as held by the court to be qualified, without a single exception, stated they had conscientious scruples only in cases wholly of circumstantial evidence, and that if such evidence was strong enough to satisfy them, beyond a reasonable doubt, that a person charged with a capital offense was guilty, they would have no such scruples. The juror Lisman was accepted by defendant, and the second taken in the case." We know of no rule of law that says the court can not explain to a juror what is meant by circumstantial evidence, and the mere fact that the court states an extreme and strong case of circumstantial evidence does not change the proposition that the court can explain what is meant by circumstantial evidence in the effort to select a fair and impartial jury. If appellant, as indicated in his bill, thought the instance cited by the court extreme, certainly he had a right to cross-examine the juror on his voir dire, and, if such examination disclosed the fact that he was not qualified under the law of this State to sit in a capital case, the facts evidencing this should be embodied in a bill of exceptions and presented for our consideration. An inspection of this bill, however, does not disclose that appellant has

been injured in any respect whatever, and it appears from the statement of the judge that the juror Lisman was not as objectionable to appellant as his long bill of exceptions would indicate, as he was the second juror taken.    Suit v. State, 30 Texas Crim. App., 319; Adams v. State, 35 Texas Crim. Rep., 285.

Appellant's sixth assignment complains of the action of the court in holding the venireman D. H. Vaughan qualified, and overruling his challenge for cause, compelling him to peremptorily challenge said Vaughan, for the reason that said Vaughan stated that he had formed an opinion in regard to the guilt or innocence of the defendant, and such opinion might influence him, and defendant was compelled to use his peremptory challenge, as shown by bill number 3.    This bill was allowed with the following qualification, to wit:  "In answering the question asked by defendant's counsel, the juror was asked if what he had heard, and the opinion he had formed, might not influence his verdict, and he answered, 'It might; but, if the evidence was different from what he had heard, he did not think that what he had heard, or the opinion formed, would have influenced his verdict.'    Then, on examination by the court, the juror said he had not heard any witness speak of the case, nor any person detail facts known to them; that what he had heard was simply rumor; that what he had read was simply a newspaper account of the matter, and the opinion he had formed was upon the condition that what he had heard and read was true; and that, if taken on the jury, and the evidence should be different, he could and would entirely disregard what he had heard and read, and the opinion formed therefrom, and try the case exclusively upon the evidence adduced upon the trial and under the charge of the court.    There was but one juror selected and impaneled after defendant exhausted his peremptory challenges, and no objection was made by defendant or his counsel to said juror."    We think the explanation of the court effectually disposes of this assignment; and, furthermore, it appears from said explanation that appellant accepted but one juror after he had exhausted his peremptory challenges, and made no objection to him.

The seventh assignment of error is to the action of the court in permittting Mrs. Hill and Mrs. Carhart to testify to declarations made by deceased, some time prior to her last sickness, to the effect that she was not troubled with her monthly period, and could not properly sympathize with those who were, and that she had no female trouble, and was regular in her monthly period, "because this purported conversation was in the absence of defendant, was hearsay, and no part of the res gestae, as shown by bills numbers 5 and 6.    When it becomes necessary to prove the physical or mental condition of deceased, it is permissible for the State to prove the acts and declarations of deceased, made on previous dates, as to her general mental and physical condition.    Therefore the courts hold that acts and declarations of a party, immediately before death, as to mental condition or physical condition, are admissible, when pertinent to the issue, and it is immaterial if said declarations refer to past events and

conditions. I Rosc. Crim. Ev., p. 31; Rogers v. Crain, 30 Texas, 284; Newman v. Dodson, 61 Texas, 95; 2 Jones on Ev., sec. 352; Steph. Dig. Ev., p. 32.

Appellant's eighth assignment of error is "that the court erred in admitting the evidence of W. M. Pugh and E. C. Gray that the deed purporting to be from Robert B. Brogdie to George Edgar Morrison, bearing date at Higgins, June 20, 1890, and witnessed by Gentry Abbott, was forged, and that the signature of the grantor and grantee were both in the handwriting of the said defendant, because said evidence was sought to prove defendant guilty of an independent crime, the acts were too remote, and if committed were after the death of his wife, and could not prove motive or knowledge, and was immaterial, and did prejudice the jury against defendant, as shown by bill number 6." Any evidence that goes to explain, illustrate, or prove motive for which a crime has been committed is admissible. It appears from the record before us that appellant formed the design to kill his wife and manufacture sufficient evidence as to his wealth to induce Miss Whittlesey to marry him. In carrying out this design, he forged this deed, as testified by the witnesses, in order to induce her to believe that he (defendant) was a man of considerable means and wealth. In the death of his wife, as indicated by the evidence, he had removed one obstacle to his marriage; and by manufacturing evidence indicating his wealth he had reached another step in "the consummation devoutly to be wished" by him. The mere fact that this evidence of appellant's guilt was created subsequent to the death of his wife does not change the rule in reference to its admissibility; but, if true, this circumstance is a potent circumstance to indicate that sedate and formed design actuated him in killing his wife. We note, in passing here, that appellant does not complain of the admission of a letter, addressed to his mother, written by himself, wherein he describes in pathetic language the death and burial of his wife. The circumstance complained of in this instance is admissible upon the same theory that the letters were admissible,—as part and parcel of one general system to destroy the life of his wife, and to marry the woman with whom he was infatuated.

Appellant's ninth assignment of error is "that the court erred in permitting H. S. Mugg, George Patton, George Farlow, and E. C. Gray to testify that the recommendation of defendant, dated Higgins, October 20, 1897, and purporting to be signed by said witnesses and others, as to some of said witnesses (who testified) the motive and purpose of said recommendation was misrepresented to them, and others of said witnesses, Patton and Farlow, testified their names were signed to same by some person other than themselves, and without their knowledge and consent, because by said evidence it was sought by the State to prove defendant guilty of an independent crime, and the said evidence was immaterial, irrelevant, and too remote to show motive or knowledge on the part of defendant, and was calculated to, and did, prejudice the jury against defendant, all of which is shown by bill of exceptions." In reference to the evidence admitted as indicated in this assignment, and the eighth

assignment above, the court charged the jury: "In this case the State has introduced evidence, which, in your opinion, may tend to prove that defendant forged the name of certain persons to certain written instruments in evidence before you. I instruct you that you can only consider such evidence or testimony for the purpose for which it was admitted; that is, as a mere circumstance which, if you deem it worthy, may be considered by you, with other evidence, if any, in determining whether defendant killed Mrs. G. E. Morrison as charged in the indictment, and, if so, his motive in so doing; and you can not and must not consider it for any other purpose, for you can not convict defendant for any offense other than that named in the indictment." We think this evidence is admissible, as indicated in the charge, on the question of the motive of appellant in the commission of the offense, and the charge of the court limiting it to that purpose was proper. Hudson v. State, 28 Texas Crim. App., 323; Leeper v. State, 29 Texas Crim. App., 63. This also disposes of appellant's sixteenth assignment of error, wherein he complains of the charge of the court above quoted.

Appellant's tenth assignment of error is: "The court erred in permitting the witnesses L. J. Thomason, F. H. Hill, Mrs. F. H. Hill, H. B. Pollard, Mrs. Pollard, Al Holland, Mrs. Ed. Carhart, and Ed. Carhart to testify that the deceased was apparently happy, contented, and joyful in disposition; that she did not appear to be sick, but had the appearance of a healthy woman; that if she had any female trouble they did not know it,—because said witnesses were not qualified to speak, as they were not physicians, and because the evidence was immaterial and irrelevant." We think the witnesses were qualified to speak, they being her neighbors, friends, and acquaintances. It certainly is not a matter for expert testimony for one to be able to testify as to the general temper and disposition of one with whom he is constantly associated, and certainly the neighbors and friends of the deceased could testify, if they knew, as to whether deceased had any female trouble. Nor do we think that the evidence was irrelevant or immaterial, but is a potent circumstance to show that deceased came to her death by some character of violence, in view of the fact that she was apparently well the evening before. 7 Am. and Eng. Enc. of Law, p. 498; Culver v. Dwight, 6 Gray, 444; Com. v. Sturtivant, 19 Am. Rep., 406; Whart. Crim. Ev., 460.

Appellant's eleventh assignment is "that the court erred in permitting the question to be asked by State's counsel of Miss Anna Whittlesey, whom she understood defendant to mean by 'Guy' in the letter of October 13, 1897, written to witness, and in permitting witness to testify 'she understood him to mean his cousin Guy E. Morrison, the one she had known in Illinois at school.'" The ground of objection is that the same was the opinion of the witness. The testimony of this witness discloses the fact that appellant had told her that his cousin Guy E. Morrison was a minister, married, and living at Panhandle; and certainly, when a letter was introduced, alluding to Guy and the death of Guy's wife, it could be explained by witness, without it coming within the objection.

of being opinion testimony. There was no error in the action of the court.

Appellant's twelfth assignment complains of the "court permitting Drs. Walcott, Warner, Carter, Morris and Dodson to testify that in their opinion deceased died from strychnine poisoning, from the description of the symptoms detailed by the witnesses in their hearing, and from the evidence produced in their hearing, because they should have testified from a hypothetical case given them, and give their opinion on such a case, and describe the effect strychnine would have on the patient, and let the jury say whether the deceased was so poisoned. Judge White, delivering the opinion of the court in Leache v. State, 22 Texas Criminal Appeals, 306, uses this language: "Medical experts may state their opinion upon the whole evidence, if they have heard it all, or upon a hypothetical statement which is in conformity with the whole evidence. Where the expert has not heard the evidence, each side has the right to an opinion from the witness upon any hypothesis reasonably consistent with the evidence. And, if meagerly presented in the examination on one side, it may be fully presented on the other; the whole examination being within the control of the court, whose duty it is to see that it is fairly and reasonably conducted." Webb v. State, 9 Texas Crim. App., 490; Burt v. State, 38 Texas Crim. Rep., 397. . We therefore hold that it was not error to permit the witnesses to give their opinion.

Appellant's thirteenth assignment is "that the court erred in refusing to grant him a new trial, because the evidence did not sustain the allegations in the indictment that deceased was named Mrs. G. E. Morrison, but the evidence shows her name to have been Minnie Morrison." We can not agree to this contention of appellant. Several witnesses testify that deceased was generally known in the neighborhood as Mrs. G. E. Morrison.

Appellant's fourteenth assignment complains "of the court's charge wherein he tells the jury they can convict defendant if he knowingly placed or laid strychnine where it might be taken by deceased, etc., for the reason that the indictment does not charge him with placing or laying same where deceased could get it; but that he administered it to her, and because the evidence did not authorize such charge." The evidence shows that appellant, on Friday before the death of deceased on Sunday night, secured strychnine from the drugstore, and had also secured some quinine, with some empty capsules; that he carried it home, left the quinine there, with the empty capsules, and on Saturday morning returned the strychnine to the drugstore, apparently in the same condition that it was when he secured it, except the druggist testified that he thought the string was some looser around the package of strychnine than it was when he let him have it. Now, then, on this state of facts, we think the charge complained of was applicable. We do not understand that the indictment should present all the facts that might be introduced in evidence as to the character and means by which the killing is done.

Appellant's fifteenth assignment complains of the "court's charge which

attempts to apply the law to the defense of appellant, because the same does not submit a plain and substantive charge, submitting the defense unmixed by the State's theory, but the same is vague, uncertain, and indefinite, and calculated to confuse the jury, and, further, required the jury, before they found defendant not guilty, to apply the rule of reasonable doubt as to whether the deceased came to her death by natural causes or by suicide, and to believe beyond a reasonable doubt that deceased came to her death by one of these causes, before they could acquit defendant." We have carefully examined the charge complained of by appellant, and must say that we do not think the same is subject to the criticism above, but the charge aptly and properly presents the defense urged by him. It is plain and unambiguous, and was not calculated in any respect to militate against the rights of appellant.

Appellant's seventeenth assignment complains of the refusal of the court to give the following requested instruction: "If you shall believe that deceased came to her death from a natural cause or causes, or that she was poisoned accidentally by taking such a potion, or that she by her own hand administered the poison for the purpose of ending her existence, then the court charges you that, in either event, defendant would not be guilty of the offense charged, and you must acquit him,"—"because the court did not, in his main charge, submit the defense in a plain and substantive charge, but confused the same with the State's theory, and because he did not, in his main charge, give the above, but refused the same, and because said charge is the law of this case." In this connection we quote the following from the court's charge: "And if you have a reasonable doubt as to whether defendant poisoned his wife with strychnine, with intent to kill her, as charged in the indictment, and if you have such doubt as to whether defendant, with intent to kill her, placed strychnine poison where he knew or believed deceased might take it, or if you have such doubt as to whether deceased committed suicide, or died from other causes than poison administered by defendant with intent to kill her, you will acquit defendant." We think this charge is all that appellant could ask in this respect.

Appellant's eighteenth, nineteenth, twentieth, twenty-first, and twenty-second assignments of error complain of the action of the court in refusing to give special charges asked by him. We have examined all of said charges carefully, and, as far as the same are applicable to the facts in this case, they were given in the court's main charge. We do not think there was any error in refusing to give them. Furthermore, the court's charge contains all the law applicable to the facts of this case, and the same is an admirable presentation of the law.

Appellant's twenty-third assignment complains that the court failed to properly define the term "malice" to the jury. An inspection of the charge shows that this assignment is not well taken. The court did define malice.

Appellant's twenty-fourth assignment is "that the court erred in allowing the county attorney, W. D. Berry, to use the following language

in his address to the jury: 'Gentlemen of the jury, they talk about defendant having his throat treated. In my opinion his throat needs one more application, and that is about twenty feet of rope.'" We have repeatedly held that, where counsel excepts to the remarks of the prosecuting attorney, they must, in addition to the exception, tender a special charge to the court telling the jury to disregard the statements. This was not done. Furthermore, we can not see how appellant was injured in any respect by the laconic declaration of the county attorney. Certainly he would have the right to say that appellant should be hanged from the testimony. This would be a legitimate argument or statement adduced from the evidence. All that we can see appellant can complain of is the original and terse way in which the county attorney put the statement. We do not think there was any error in this.

Appellant's twenty-fifth assignment complains of the court permitting S. H. Cowan to read, in his closing argument for the prosecution, from the American and English Encyclopedia of Law, the definition of "reasonable doubt," for the reason that defendant's counsel had not an opportunity to answer or reply to same, as none of the other counsel for the State, preceding defendant's counsel, had read anything from the books on the question, or presented any argument along that line, and, besides, the paragraph was not the law, and the jury should have received the law from the court. It appears from the bill that Cowan, before Hall and Houston, attorneys for defendant, made their argument to the jury, handed them a slip of paper, stating certain authorities from which he expected to read in his argument before the court; and among other authorities was the ninth volume of American and English Encyclopedia of Law, and the authority referred to, but did not hand them the book. This statement discloses that appellant's counsel had the privilege of arguing and commenting upon this authority to the judge and jury, if he had desired to do so. If he failed to avail himself of the privilege, we can not see how he can here complain. Again, the conduct of the trial on the question of argument is left largely to the sound discretion of the trial court, and we do not think the record before us discloses the fact that in this instance this discretion has been abused.

Appellant's twenty-sixth assignment complains of the action of the court in qualifying bills of exceptions numbers 2 and 4, for the reason that, if the court could not give the bill as presented, he should have drawn up one of his own, and then, if defendant was not satisfied with the bill as presented by the court, he could prove up the bill by bystanders, and such qualifications materially change the bill as presented and allowed, which was only returned defendant in the last hours of the expiring court, with the qualifications indorsed on same. We think it sufficient answer to this criticism to say that we have held the court could, in his discretion, very properly explain the rulings excepted to when signing the bill. Bejarano v. State, 6 Texas Crim. App., 265; Hardy v. State, 31 Texas Crim. Rep., 289.

Appellant's twenty-seventh and last assignment of error complains of

the action of the court in failing to charge the jury that they could not consider, as a circumstance against defendant, the fact that he failed to testify in his own behalf. We do not think it was error for the court to fail to charge this. We have heretofore held that it was not error to do so, nor do we think it error not to do so.

We have examined all of appellant's assignments of error in the order in which they are stated in the record, and find no reversible error therein. The facts show that for deliberate fiendishness they are almost without a parallel in the annals of criminal jurisprudence. The jury inflicted the punishment of death upon appellant, and, according to the record before us, this is just. The judgment is in all things affirmed.

*Affirmed.*

[NOTE.—Appellant's motion for rehearing, filed May 16, 1899, was overruled without a written opinion.—Reporter.]