Battle, J.
 

 The sole question presented on the record is, whether the witness
 
 Podtehett
 
 was competent to testify as an expert, that the defendant was a descendant of an African ancestor. An expert, in the strict sense of the word, is defined to be “ a person instructed by experience.” But more generally speaking, the term includes
 
 “
 
 all men of science as it was used by Lord Mansfield, in
 
 Folkes
 
 v.
 
 Chadd,
 
 3 Doug. Rep. 157, “ or persons conversant with the subject matter, on questions of science, skill, trade and others of the like kind;” Best’s principles of Evidence, sec. 346; 1 Greenf. on Evidence, in note to sec. 440. The rule on this subject is stated by Mr. Smith in his note to
 
 Carter
 
 v.
 
 Boehm,
 
 1 Smith’s Lead. Cas. 286; “ On the one hand it appears to be admitted, that the opinion of witnesses, possesssing peculiar skill, is admissible whenever the subject matter of enquiry is such, that inexperienced persons are unlikely to prove capable of forming a correct judgment upon it without such assistance; in other words, where it so far partakes of the nature of science as to require a course of previous habit, or study, in order to the attainment of a knowledge of it; while, on the other hand, it does not seem to be contended that the opinion of witnesses can be received when the enquiry is into a subject matter, the nature of which is not such as to require any peculiar habits or study, in order to qualify a man to understand it.” In support of the principles thus announced, it has been decided that seal-engravers may be called to give their opinion upon an impression, whether'it was made from an original seal, or from another impression;
 
 Folkes
 
 v.
 
 Chadd,
 
 Doug. Rep.
 
 ubi supra.
 
 So, the opinion of an artist in painting, is evidence oj the genuineness of a picture, Ibid. It has been said that the genuineness of a post-mark may be proved by the opinion of one who has been in the habit of receiving letters with that mark;
 
 Abbey
 
 v.
 
 Hill,
 
 5 Bing.
 
 299.
 
 A ship-builder may give his opinion as to the sea-worthiness of a ship, on facts stated
 
 *287
 
 by others;
 
 Thornton
 
 v.
 
 The Royal Exch. Ass. Co.
 
 1 Peake’s Rep. 25. Merchants and bankers, who are daily engaged in handling the notes of particular banks, and have thus become thoroughly acquainted with their whole appearance, may prove whether a particular note is genuine or counterfeit;
 
 State
 
 v. Harris, 5 Ire. Rep. 287. Persons accustomed to observe the habits of a certain kind of fish, have been permitted to give in evidence their opinions as to the ability of the fish to overcome certain obstructions in the rivers, which they were accustomed to ascend;
 
 Cottrill
 
 v. Myrick, 3 Fairf. Rep. 222. Many other instances of the application, of the principle might be given, but those to which we have referred, are sufficient to show that it is extensive enough to embrace the case now before us. The effect of the intermixture of the blood of different races of people, is surely a matter of science, and may be learned by observation and study. PTor does it require a distinguished comparative anatomist to detect the admixture of the African or Indian with the pure blood of the white race. Any person of ordinary intelligence, who, for a sufficient length of time, will devote his attention to the subject, will be able to discover, with almost unerring certainty, the adulteration of the Caucasian with the PTegro or Indian blood. This is incidentally implied in the following extract from the work of PTott
 
 &
 
 G-liddon on the “ Types of Mankind,” which will be found on page 260.
 
 “
 
 Mr. Lyell, in common with tourists less eminent, but, on this subject, not less misinformed, has some where stated that the negroes in America are undergoing a manifest improvement in their physical type. He has no doubt, that they will, in time, show a develop/ment in skull and intellect quite equal to the whites. This unscientific assertion is disproved by the cranial measurements, of Dr. Morton.” After admitting some physical improvement on account of the increased comforts with which the negroes are here supplied, the authors add, one or two generations of domestic culture, effect all the improvement of which negro-organism is susceptible.
 
 We
 
 possess thousands of the second, and many more of negro families of the eighth
 
 *288
 
 or tenth generation in the United States, and (where unadul terated with white blood) they are identical in physical and intellectual characters. Ho one in this country pretends to distinguish the native son of a negro from his great grandchild, (except through occasional and ever apparent admixture of white or Indian blood) while it requires the keen and experienced eye of such a comparative anatomist as Agassis to detect structural peculiarities in our few African born slaves. The improvements among Americanised negroes noticed by Mr. Lyell, in his progress from South to North, are solely due to those ultra ecclesiastical amalgamations, which, in their illegitimate consequences, have deteriorated the white element, in direct proportion that they are said to have improved the black.” It is here clearly implied that even a common observer may discover, from the outward appearance, the in-termixture of the white and black races, and on that account it may perhaps be said, that to be able to do so, is not a matter of science or skill. It may well be admitted, that simply to be able to detect the presence of African blood by the color, or other physical qualities of the person, is not a matter of science, but it will by no means follow that a qualification to ascertain the extent of the negro blood is not so. On the contrary, we believe that it would often require an eye rendered keen, by observation and practice, to detect, with any approach to certainty, the existence of any thing less than one-fourth of African blood in a subject. A free negro, so far as he is noticed as such, in our law, is defined (Rev. Code, ch. 107, sec. 79,) to be one who is “ descended from negro ancestors to the fourth generation inclusive, though one ancestor of each generation may have been a white persop.” He may, therefore, be a person who, as we said in the
 
 State
 
 v.
 
 Chavers, 5
 
 Jones’ Rep. 11, has only a sixteenth part
 
 of
 
 African blood in his veins. The ability to discover the infusion of so smalL a quantity of negro blood in one, claiming the privilege of a white man, must be a matter of science, and, therefore, admitting of the testimony of an expert; and we think that the
 
 *289
 
 witness, Pritchett, proved, in the present case, that he possessed the necessary qualification, to testify as such.
 

 Per Otjeiam, Judgment affirmed.