The State v. Buchler.

| 103 | 208 |
| 105 | 320 |
| 103 | 203 |
| 107 | 350 |
| 103 | 203 |
| 108 | 151 |
| 103 | 203 |
| 109 | 495 |
| 103 | 203 |
| 124 | 668 |
| 103 | 203 |
| 126 | 521 |
| 103 | 203 |
| 136 | 58 |
| 103 | 203 |
| 146 | 184 |
| 103 | 203 |
| 156 | 256 |

## THE STATE v. BUCHLER, *Appellant.*

### DIVISION TWO.

1. **Criminal Practice**: ASSAULT TO KILL : EVIDENCE.  In a prosecution for assault with intent to kill, testimony of a witness that the expression on defendant's countenance at the time of the assault was that of "anger, ferocity, vulgar hate" is competent.

2. —— : —— : OPINION OF WITNESS.  The impressions or opinions of a witness as to such matter are admissible from the necessity of the case.

3. —— : EVIDENCE : ORDER OF INTRODUCTION.  The order of introduction of evidence is a matter of practice resting largely within the discretion of the trial court.

4. —— : ——.  Where matters properly admissible in chief are introduced out of their order, the opposite party has the right to offer opposing evidence.

5. —— : ASSAULT TO KILL : EVIDENCE.  The coat worn by the prosecuting witness at the time of an assault with intent to kill by a pistol shot and which bore traces of the ball, is admissible in evidence on the trial of the offense, testimony being offered to show that it was in the same condition when exhibited to the jury that it was at the time of the assault.

6. —— : OBJECTIONS TO EVIDENCE : SUPREME COURT PRACTICE.  The introduction of evidence must be objected to and exceptions be saved or the supreme court will not review its admission.

7. —— : INSTRUCTION : LOWER GRADE OF CRIME.  An instruction authorizing a conviction of a lower grade of crime than that charged in the indictment is not prejudicial error and will not avail the defendant.

8. —— : —— : CREDIBILITY OF WITNESSES.  Where there is an irreconcilable conflict in the testimony and the veracity of witnesses is impeached, and evidence of contradictory statements

The State v. Buchler.

offered, it is proper to instruct the jury as to the credibility of wit-
nesses, but it is error to charge that "if any witness has made any
wilfully false statement they may disregard the whole of such wit-
nesses' testimony," without limiting it to wilfully false statements,
"made under oath, of some fact material to the issue in the case."
(*Distinguishing State v. Jones*, 86 Mo. 623.)

*Appeal from Clark Circuit Court.* — HON. B. E.
TURNER, Judge.

REVERSED AND REMANDED.

*W. L. Berkheimer* and *J. W. Howard* for appellant.

(1) The court erred in allowing the attorney for
the state to ask the prosecuting witness as to expression
of defendant's countenance. Wharton's Crim. Law,
sec. 457; *Gassenheimer v. State*, 52 Ala. 314; *Ames v.
Snyder*, 69 Ill. 376; *Ashland v. Marlboro*, 99 Mass. 41;
*Russell v. State*, 53 Miss. 367; *Hawkins v. State*, 25
Ga. 207; *McAdory v. State*, 59. Ala. 92, (2) The
court ought not to have allowed the state to intro-
duce the coat in evidence in rebuttal. Wharton
Crim. Ev., sec. 767; *Commonwealth v. Twitchell*, 1
Brevort, 561; *Cristal v. Craig*, 80 Mo. 367; *Tierney v.
Spiva*, 76 Mo. 279; *Babcock v. Babcock*, 46 Mo. 243;
*Reed. v. Railroad*, 60 Mo. 199. (3) The court erred in
instructing the jury that they mightfind the defendant
guilty of an offense under Revised Statutes, 1879, section
1263. *State v. Wilson*, 86 Mo..520; *State v. Green*, 66
Mo. 631; *State v. Degonia*, 69 Mo. 485; *State v. Gerber*,
80 Mo. 94. (4) The court erred in the instruction as
to the credibility of the witnesses. *State v. Mix*, 15
Mo. 153; *State v. Brown*, 64 Mo. 367; *State v. Elkins*,
63 Mo. 159; *State v. Stout*, 31 Mo. 406; *State v. Cushing*,
29 Mo. 215.

*John M. Wood*, Attorney General, and. *T. L.
Montgomery*, for the State.

(1) The evidence that defendant showed from the
expression of his face that he was angry was properly

admitted. *State v. Ramsey*, 82 Mo. 133; *State v. Parker*, 96 Mo. 382. Even had this evidence been improperly admitted, it did not prejudice the substantial rights of defendant on the merits, and would not justify a reversal of the case. *State v. Owens*, 78 Mo. 367; *State v. Grate*, 68 Mo. 22; *State v. Holme*, 54 Mo. 160. (2) The coat the prosecutor had on at the time of the difficulty was admissible in evidence. Whar. Crim. Ev., sec. 767; *State v. Wieners*, 66 Mo. 13. It will be observed that the prosecutor testifies that the coat was "just as he pulled it off." Nor was there error committed in allowing this evidence to be offered in rebuttal. The order in which testimony shall be given to the jury is in the discretion of the court. *State v. Daubert*, 42 Mo. 239; *State v. Linney*, 52 Mo. 40. (4) No objection was made by defendant to the introduction of evidence in regard to the character of Dr. Leach. (5) Conviction may be had of a less offense, which is necessarily included therein. R. S. 1879, sec. 1655; *State v. Burk*, 89 Mo. 635; *State v. Forsythe*, 89 Mo. 667.

MACFARLANE, J.—Defendant was indicted for feloniously, and of his malice aforethought, assaulting one Albert D. Leach, with a pistol, with intent to kill. Defendant admitted the shooting, but defended on the ground that he did so in self-defense. Upon a trial in the circuit court of Clark county, defendant was found guilty and sentenced to two years' imprisonment in the penitentiary. From the judgment he appeals to this court.

The evidence discloses that no one was present when the difficulty between defendant and Leach occurred. They were both practicing physicians, living and practicing their profession at Athens, in Clark county. Bad feeling had existed between them for a considerable time, and there was evidence offered of threats made prior to the difficulty.

On the morning of June 1, 1887, Leach drove in a buggy into the country about eight miles to see a patient, and on his return home, about nine o'clock in the morning, he met defendant also in a buggy in the road, where it passed through a strip of timber. This is as far as the testimony of these two witnesses agree. Leach, the prosecuting witness, testified that defendant stopped his buggy before he reached him ; that defendant's buggy stood between two trees, giving barely room for his buggy to pass ; that as he drove past defendant drew his pistol and fired one shot, another immediately after, and then turned his buggy and fired a third shot after him, and that by one of these shots he was wounded in the arm. On the other side, defendant testified that when they met in the road they both stopped and got into a controversy over old disputes ; that Leach got out of his buggy, picked up a large club and struck him one blow over the head and shoulder, and raised the club for a second blow, when he drew his pistol and fired three shots in rapid succession, inflicting a wound in the arm by one of them. A number of other witnesses were examined, as to the facts and circumstances corroborating and contradicting these witnesses ; evidence was introduced with a view of impeaching the general reputation of some of the witnesses for truth, and of showing that some of them had made, at other times, statements, which were contradictory of their testimony.

A great number of objections are urged to the proceedings, upon which the judgment was obtained ; such of these as have any particular bearing will be considered in detail.

I.   The prosecuting witness was asked the following question : " State what you discovered on defendant's countenance, if anything. A. The expression of his face was anger, ferocity, vulgar hate. The meanest look a mortal man's face could have." Another witness was asked substantially just the same question as to

defendant's appearance just after the affray, and his answer was, that he appeared to be angry. These questions and answers were objected to on the ground that the questions called for, and the answers gave, merely an opinion of the witness. If the expressions of the countenance of one accused of crime could be seen by, or reproduced before the jury exactly as it was at the time, and immediately before and after the act, there can be no doubt it would have great weight in determining the intent and purpose of the accused, and the motives by which he was actuated; often it would be absolutely convincing. Such being its character, evidence of such expression would certainly be admissible. The general rule, it is true, is, that a witness must testify to facts, and the jury draw its conclusions from these facts. There are, however, manifestations, expressions and conditions which language, at least of ordinary persons, cannot reproduce. Of such matters a witness is allowed to give the impression produced upon himself. This impression may be very near to an opinion. Thus a witness is allowed to testify that an object is red in order to distinguish it from other colors. This is nothing more than an impression produced upon his mind upon examination of the object, but he testifies about a subject, upon which common experience and knowledge have qualified him to speak; what facts could he state that would give the idea of red as the color of the object; of the same character is the expression of the countenance. A person of ordinary understanding could not detail facts which would give to a jury the remotest idea of the passions expressed on the countenance, though a child, one year old, would distinguish anger from love in its mother's face. Witnesses are allowed to testify to their impressions or opinions on such matters, for want of any other way to get the evidence before the jury; they admit of no more definite proof. *State v. Ramsey*, 82 Mo. 133; *State v. Parker*, 96 Mo. 382; Whart. Crim. Ev., sec. 460; *People v.*

*Lilly*, 38 Mich. 270 ; Whart. Crim. Ev., sec. 751 ; *State v. Hopkirk*, 84 Mo. 278.

II.   The state was permitted, over defendant's objections, after the close of defendant's evidence, to introduce the coat worn by Leach when he was wounded. The objection made by defendant was on the ground that the evidence was properly in chief, and could not be offered in rebuttal.   The order in which evidence may be introduced is a matter of practice, largely within the discretion of the court.   If matters properly in chief are introduced out of their order, the opposite party would have the right to offer evidence to rebut them. We can see no substantial rights of which defendant was deprived on account of the time and order in which the evidence was introduced, and we must presume it was inadvertently omitted in chief.   *State v. Daubert*, 42 Mo. 239 ; *State v. Linney*, 52 Mo. 40.   Evidence having been offered that the coat was in the same condition, when exhibited to the jury, that it was when taken off after the shooting, there *was* no error in admitting it in evidence.   Whart. Crim. Ev., sec. 767 ; *State v. Wieners*, 66 Mo. 13.   Such evidence, showing, as it may, the direction of the ball, might have great weight in determining the respective positions of the parties to each other, and their attitudes when the shot was fired.

III.   Evidence was offered by defendant to prove that the prosecuting witness, Leach, had previously made statements which were contradictory to his evidence on the trial.   In rebuttal, the state called witnesses who testified in support of his general reputation for truth.   The action of the court in allowing this supporting evidence is assigned as error.   An examination of the record shows that no objection to this evidence was made and no exceptions saved.   It is not, therefore, properly before us, and cannot be considered.

IV.   Defendant complains of the action of the court, in giving an instruction authorizing a verdict for an assault, as defined in section 1263, Revised Statutes,

The State v. Buchler.

1879. It is rather a strange objection, coming from defendant, inasmuch as said section defines a lower grade of crime and pronounces a lighter punishment than the section under which he was indicted. The wisdom of the law, in allowing juries to scale down the punishment in this class of cases, is manifest from this contention. We are of the opinion the evidence justified the instruction, and if it did not defendant could not be prejudiced by it.

V. Instruction, numbered 5, given on behalf of the state, was as follows : "That the jury are the judges of the evidence — the weight of the evidence ; and if any witness has made any wilfully false statement, or sworn wilfully falsely to any material fact, they may disregard the whole of said witness' testimony ; and, in arriving at the credibility of witnesses, they may take into consideration the fact that witnesses for defendant are his relatives, if such relationship is shown."

Objection is made to this instruction on the ground that the court advised the jury that, "if any witness has made any wilfully false statement," they may disregard the whole of said witness' testimony. That such direction is complete in itself, and is not connected with or qualified by the other words, "or sworn wilfully false to any material fact," is undoubtedly true. It was for some time questioned by distinguished and learned judges of this court, whether, under our code procedure, it was proper to instruct the jury at all as to when the testimony of a witness might be wholly disregarded. NAPTON, J., in *State v. Cushing*, 29 Mo. 217 ; SCOTT, J., in *State v. Schoenwald*, 31 Mo. 155, who says : " In my opinion, the court has no authority to prescribe any rules to the jury by which they are to determine the credibility of the witnesses." In *Gillett v. Wimer*, 23 Mo. 78, the instruction approved was as follows : "If the jury believe from the evidence that the witness ( Cross ) wilfully testified falsely with regard to any

VOL. 103—14

material fact, they are authorized to discard the whole of his testimony." In discussing the question, RYLAND, J., indicates clearly that the false testimony must have been upon a fact material to the issue. He says: "If the circumstances, respecting which the testimony is discordant, be immaterial, * * * there is much room for indulging the belief that the discrepancies arise from the infirmity of the human mind, rather than from deliberate error."

An instruction, having all the material qualifications of this one, has been repeatedly approved by this court, and the courts of appeals of this state. *State v. Dwire*, 25 Mo. 554; *Paulette v. Brown*, 40 Mo. 57; *Kelly v. Express Co.*, 45 Mo. 428; *State v. Elkins*, 63 Mo. 166; *Evans v. Railroad*, 16 Mo. App. 522; *Blitt v. Heinrich*, 33 Mo. App. 245. In the following cases an instruction has been condemned which left out the word wilfully or knowingly: *Bank v. Murdock*, 62 Mo. 74. In case of *State v. Lett*, 85 Mo. 56, the word "wilfully" was omitted and the instruction approved, but afterwards, in *State v. Palmer*, 88 Mo. 572, an instruction omitting the word wilfully was again condemned on that ground. Thus it will be seen, from the decision in this state, that an instruction that the jury may disregard the testimony of any witness should be given with great caution and discrimination, and should not be given at all unless fully justified by the testimony of some witness or witnesses (*White v. Maxcy*, 64 Mo. 559); that when given the testimony must have been given under oath; it must have been given upon a fact material to the issue in the case and the testimony must have been not only false, but wilfully false. As a general rule none of these elements should be omitted. "The proposition that the jury have the right to disbelieve such witnesses as, in their judgment, under all the circumstances of the case, are unworthy of belief, is not the law. The jury, although they are the judges of the credibility of the witnesses, have no right to

arbitrarily disbelieve the testimony, unless where such witnesses have wilfully and knowingly sworn falsely to material facts in the case." *Evans v. George*, 80 Ill. 53.

The instruction complained of, tested by these authorities, is clearly faulty in directing the jury that they may disregard altogether the testimony of any witness who has made any wilfully false statement. Under some state of facts, such an instruction might be entirely harmless, as where no statements were in evidence that were not sworn to, and when no evidence was given, that was not material to the issues being tried ; but even in such a case the jury could only be confused, and perplexed, and such unnecessary additions to the usual form should be avoided. The instruction in case of *State v. Jones*, 86 Mo. 623, is one of the character mentioned. There was nothing in that case to show that any statements of any witnesses, not under oath, had been shown, or that any statements were made, not pertinent to the issues, nor was any specific objection made to the instructions by the defendant. The instruction given under the fact in that case was no cause for the reversal of the case.

In the case at bar the matter was different ; there was not only an absolutely irreconcilable conflict between testimony of the prosecuting witness and defendant, but the veracity of other witnesses was questioned, attempts to impeach made, and evidence that contradictory statements had previously been made offered. The instruction, as given, was calculated to mislead the jury.

It is true the jurors must determine in all cases the credit to be given the testimony of the witnesses, and may believe or disbelieve it according to their own judgment ; but when the court throws its sanction to discredit a witness into the scale, already trembling on a balance, the result in most cases will not remain in doubt.

Greeley v. The Provident Sav. Bank.

An examination of the record discloses no error in the giving or refusal of other instructions.

For the errors mentioned the judgment will be reversed and cause remanded. All members of this division concur.