## JOHN OWEN v. THE STATE.

### No. 3829.    Decided November 13, 1907.

**1.—Murder in Second Degree—Plea—Statement to Jury—Statutes Construed.**

Where upon trial for murder, after the jury were impaneled, the indictment read, and the plea of not guilty entered, defendant then proposed to make a statement to the jury of what he expected to prove, to which the State objected, which objection was sustained. Held, that there was no error, as such statement was not offered at the proper time under article 697, Code Criminal Procedure. Query: What would be the effect of a refusal at the proper time to hear such statement is not decided.

**2.—Same—Evidence—Malice—Ill-will.**

Upon trial for murder there was no error in permitting the prosecution to prove that defendant cursed and abused the deceased from about a year prior to the killing up to within a short time of the homicide.

**3.—Same—Evidence—Threats.**

Upon trial for murder there was no error in admitting defendant's declarations in speaking of the deceased some time before the homicide, to the effect that when he got ready to leave he would show them a trick.

**4.—Same—Evidence—Motive—Malice.**

Upon trial for murder there was no error in permitting the State to introduce declarations of the defendant, made several months before the homicide, to the effect that he had a good notion to cut the throat of deceased, because she aggravated him in not living with him.

**5.—Same—Evidence—Mental Attitude of Parties—Shorthand Facts.**

Upon trial for murder there was no error in permitting the State to introduce testimony showing that at times before the homicide when defendant would be talking about his wife he was mad or appeared to be mad and angry. This is a shorthand rendering of the facts which are more or less incapable of being fully and accurately detailed so as to convey the truth as the witness sees it, and thus impresses it upon the minds of the jury.

**6.—Same—Evidence—Hypothetical Question—Expert Testimony—Morphine.**

Upon trial for murder where objections were made by the defense to the manner of putting the hypothetical questions to experts with reference to the effect of morphine, which seems to have been administered to the deceased by her mother to alleviate pain shortly after the blow was inflicted upon deceased by defendant, because the State omitted the matter of morphine in such question; and the record disclosed that the expert witnesses were thoroughly questioned by the defendant's counsel with reference to the effect of the morphine, there was no error. Neither did it appear that morphine was administered in the manner implied by the court's hypothetical question to which defendant objected; or that any injury resulted.

**7.—Same—Evidence—Indirect Threat.**

On trial for murder there was no error in admitting the declaration of defendant that if deceased did not live with him that she would not have the pleasure of

living with any other man; it having been shown that defendant was jealous of deceased and that the trouble arose from this fact.

**8.—Same—Evidence—Character of Wound.**

Upon trial for murder there was no error to admit testimony that blood ran from the ear of the deceased, and oozed through the pillow, to show the seriousness of the wound.

**9.—Same—Intent to Kill—Charge of Court—Morphine.**

Upon trial for murder where the court's charge submitted the issues of the case not only as to the intent of the accused, but also as to his want of responsibility for the homicide if death occurred by means of morphine, there was no error.

Appeal from the District Court of Wood. Tried below before the Hon. R. W. Simpson.

Appeal from a conviction of murder in the second degree; penalty, forty-eight years imprisonment in the penitentiary.

The following statement of the case by the Assistant Attorney-General is substantially correct: The record discloses that the appellant and the deceased were husband and wife. They had been married some two years; did not live happily together and that there were frequent separations. At the time of the killing they had been separated some time. On the night of February 16, 1907, the defendant came to the house where his wife was living with her children by former marriage. After supper the appellant and his wife, the deceased, together with other members of the family started to walk over to the house of the mother of deceased some half a mile distant. The deceased and his wife, walking in advance, followed by the children and the witness Barney Holmes who was leading his horse. Suddenly her son, Olive Smith, heard the defendant say something when his mother cried out, "run here he is going to hurt me," which remark was followed by a blow distinctly heard by these parties who ran up, found the deceased lying upon the ground, the defendant standing over her with a 45-pistol, where he stood a moment or two and then disappeared and was never seen any more until he was arrested in Louisiana some month or so afterwards and returned to the jail of Wood County. His wife lived some twelve or fourteen hours; she received a terrible blow on the head which fractured the skull, produced concussion of the brain from which she died. The mother of the deceased some two hours after the lick was inflicted administered to her a dose of morphine which quieted her awhile but afterwards she recovered from the effect of the dose and continued to suffer terrible agony until the time of her death.

The defendant contended that he had no intention of killing the deceased when he struck her; that the weapon used was not in its nature calculated to produce death; that the dose of morphine either caused her death or her death was superinduced by the use of morphine.

*M. D. Carlock,* for appellant.

*F. J. McCord,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of murder in the second degree, the punishment assessed being forty-eight years confinement in the penitentiary, for the alleged murder of his wife.

The first bill of exceptions recites that after appellant had entered his plea of not guilty and after the jury had been empaneled, he requested the court that he be allowed to state to the jury in substance his defense in order that the jury might be fully informed of the nature and character and extent of his defense. To this the district attorney objected and the court sustained the objection. Then follows in the bill matters that were intended to be stated to the jury. Article 697 of the Code of Criminal Procedure, provides, first: The indictment shall be read to the jury by the district or county attorney; second, the special pleas, if any, shall be read by the defendant's counsel, and if the plea of not guilty is also relied upon, it shall be stated; third, that the counsel prosecuting for the State shall inform the jury the nature of the accusation and the facts which are expected to be shown by the State; fourth, the testimony on the part of the State shall be introduced; fifth, the nature of the defenses relied upon shall be stated by the counsel of the defendant, and what are the facts expected to be proved in their support; sixth, the testimony on the part of the defendant shall be introduced, and, seventh, rebutting testimony may be offered on the part of the State and of the defendant. In a subsequent article it is provided that testimony may be introduced at any time before the argument of a cause is concluded, if it appears that it is necessary to a due administration of justice. In Holsey v. State, 24 Texas Crim. App., 35, it was held that where the prosecution had failed to make a statement to the jury of the State's case, as provided in subdivision three above quoted, that it was not reversible error unless it was shown or be made reasonable to appear that injury had been done the accused by such failure. We passed on a somewhat similar question to the one here involved at the present term in the case of Sue v. State. That case, however, is to be distinguished from this in that appellant proposed to enter into an argument on the force and effect of his testimony in making the statement which was refused by the court. The substance of that case is that appellant would not have a right to argue his case but simply make a statement of the issues and of the facts supporting such issues, and further, in order to require a reversal, it must be shown that appellant suffered some injury or that the force and effect of such refusal was reasonably calculated to injure his legal status and rights. Taking the bill here as stated in the record, we find that when the jury were empaneled, the indictment read, and the plea of not guilty entered, appellant then proposed to make his statement. There was no error in the court refusing the statement at this stage of the pro-

ceedings. It may have been this peculiar condition of things that induced the court to refuse to permit the statement to be made. The statement was not again offered at the proper time, so far as the bill is concerned. Nor is there anything in the bill to make it appear that in the due order of the proceedings, appellant offered to make the statement at the time authorized by the statute, or that the court refused to hear a statement or permit it to go to the jury as provided by the statute. If it had been offered at the proper time we would presume in the absence of the contrary showing that the court would have permitted the statement to have been made. As the bill presents the matter, we do not feel called upon to decide what would be the effect of a refusal at the proper time to hear such statement, but in passing, however, we would state wherever the statute provides a matter that may redound to the benefit of the accused on his trial, or that is authorized in his behalf, such provision of the statute should be complied with and enforced. Whatever the courts may think about such proceedings the Legislature has so provided, and the safe rule is to follow statutory enactments. To say the least of it, it will avoid questions for decisions upon appeal without any necessity for such questions.

Error is assigned with reference to the action of the court to permit the prosecution to prove that appellant cursed and abused his wife, the deceased, from about a year prior to the killing up to within a short time of the homicide. These bills are approved with the explanations by the trial court that, "The State's theory was a continuous course of ill treatment and manifestations of ill-will toward his wife from the time of the marriage, and this character of evidence was admitted to show malice and ill-will."

There are two bills reserved to the ruling of the court permitting the witness to testify that at the defendant's house one day he heard defendant make a remark, speaking of his wife, the deceased, in reference to them going to the town of Lindale, and after this testimony was introduced, the defendant said that "when he got ready to leave he would show them a trick." Objection was urged to this testimony. This was in the nature of a threat and clearly admissible.

The witness Willie Smith, testified, over appellant's objection, that he had a conversation with appellant with reference to the deceased one day when they were going from Big Sandy in a hack, which was a day before defendant carried deceased and children to Tyler to a show, some four or five months prior to the killing, in which conversation appellant stated that the deceased aggravated him sometimes when she would not live with him so that he had a good notion of cutting her throat. Threats directly or indirectly made are admissible upon the question of motive or malice and intention of the party subsequently acting apparently or directly in line with the threat made.

Evidence was introduced by the State showing that at times when appellant would be talking about his wife he was mad or appeared to

be mad and angered. Exception was reserved to this character of testimony. "It is well settled that any ordinary observer of a person is competent to testify whether or not he manifested anger or hatred toward another." 5 Enc. of Ev., p. 701; Miller v. State, 107 Ala., 40; Jenkins v. State, 82 Ala., 25; Carney v. State, 79 Ala., 14; Arnold v. Cofer, 135 Ala., 364; Fields v. State, 35 So. Rep., 185; State v. Shelton, 64 Iowa, 333; Stacy v. Portland Pub. Co., 68 Me., 279; State v. Buchler, 103 Mo., 203; Hardy v. Merrill, 56 N. H. 227; State v. Pike, 49 N. H., 399; State v. Edwards, 112 N. C., 901, and Reeves v. State, 96 Ala., 33. The reason for the rule is thus stated: "Whether a person manifested anger or any other passion upon a particular occasion depends so largely upon the peculiar and indescribable appearance of the face and other indications at the moment that an eye-witness may be morally sure of the fact, and yet utterly unable to communicate to another such indicia with sufficient distinctness to give any satisfactory idea of the existing fact." Snow v. Boston R. R. Co., 65 Me., 230. In Reeves v. State, supra, it was held, in substance, where a party was being prosecuted for using indecent language in the presence of women, that a witness was properly permitted to testify that the defendant was talking mad. This same line of thought has been accentuated in this State in many decisions to the effect that where matters are such that they cannot be detailed accurately by the witness so as to convey the real condition of things such facts may be stated as near as possible, and then the witness may make the statement as to the appearance, under the rule that it is a shorthand rendering of the facts which are more or less incapable of being fully and accurately detailed so as to convey the truth as the witness sees it, and so impress it upon the minds of the jury. It was held in the case of State v. Buchler, supra: "If the expressions of the countenance of one accused of crime could be seen by or reproduced before the jury exactly as it was at the time, and immediately before and after the act, there can be no doubt it would have great weight in determining the intent and purpose of the accused, and the motives by which he was actuated. Often it would be absolutely convincing. * * * A person of ordinary understanding could not detail facts which would give to a jury the remotest idea of the passions expressed on the countenance, though a child one year old would distinguish anger from love in its mother's face. Witnesses are allowed to testify to their impressions or opinions on such matters for want of any other way to get the evidence before the jury; they admit of no more definite proof." It is laid down again as a well settled rule that a witness may be permitted to testify to the appearance or looks of a person, or that a person at a certain time looked pale and such testimony does not violate the general rule which governs the statements or opinions and conclusions by a witness. Childs v. Muckler, 105 Iowa, 279; Burton v. State, 107 Ala., 108; Healy v. Visalia & T. R. Co., 101 Cal., 585; People v. Lavelle, 71 Cal., 551; Louisville, N. A. & C. R. Co., v.

Frawley, 110 Ind., 18; State v. Baldwin, 36 Kan., 1; Cannady v. Lynch, 27 Minn., 435; Hall v. Austin, 73 Minn., 134; People v. Packenham, 115 N. Y., 200; Hare v. Board of Education, 113 N. C., 9; State v. Jacobs, 51 N. C., 284; State v. Bradley, 64 Vt., 466; Enc. of Ev., vol. 5, p. 677, and notes. To the same extent, with reference to motive, etc., see Woods v. State, 37 Texas Crim. Rep., 459; Mathis v. State, 34 Texas Crim. Rep., 39, and for collation of authorities see White's Code of Criminal Procedure, p. 688, and White's Annotated Penal Code, section 1231, where many authorities are collated. Without reviewing further the questions raised by the conduct and expressions of ill-will and appearances of anger when speaking to or of his deceased wife and kindred matters reserved in the bill of exceptions and discussed in the brief, we have referred to these authorities as supporting the ruling of the court in the admission of all that character of testimony.

Objection was reserved to the manner of putting the hypothetical questions to experts with reference to the effect of morphine, which seems to have been administered to the deceased by her mother to alleviate her pain shortly after the blow was inflicted upon her by appellant. The principal ground of this seems to be that it was not the case made by the testimony in this: that nowhere did the State's attorney state to the witness that about 9 o'clock the deceased had taken a grain dose of morphine. It would seem from the bill that the State put its hypothetical case on the facts proven as to the effect of the blow upon the head, fracturing the skull, and the subsequent condition of the patient or the injured party, following this blow until the time of her death, which was a few hours subsequent to the blow. Not a great while after the blow was inflicted, an hour or such matter perhaps, the mother of the deceased gave her some morphine supposed to be a grain tablet. There is much testimony in the record in regard to this matter, to the effect that it was that quantity of morphine and the subsequent condition of the woman as she rallied from under the influence of it. Restated, appellant's objection to the hypothetical question put by the State was in putting it the State omitted the matter of morphine. Under the authorities in this State this objection is not tenable. This matter was very fully discussed in Burt v. State, 38 Texas Crim. Rep., 397, in which the rule is laid down that each side has a right to the opinion of the expert witness upon any hypothesis reasonably consistent with the evidence, and if partially put in the examination on one side, it may be fully presented by the other, the whole examination being within the control of the court, whose duty it is to see that it is fairly and reasonably conducted. See also Lovelady v. State, 14 Texas Crim. App., 545. In propounding a hypothetical question the party propounding it is authorized to assume the facts in accordance with his theory of them and a failure of such assumed facts involves a failure of the answers based upon such hypothetical question. It is disclosed very fully by this record that the expert witnesses

were thoroughly questioned with reference to the effect of the morphine, and that appellant placed his hypothetical question so as to include his theory of morphine either bringing about or contributing to the death of the deceased. There was no error in regard to these matters as presented by the bills of exception under the authorities in this State and the rule laid down in them. It is also stated in one of the bills of exception that after one of the witnesses had been examined in reference to the hypothetical question, the court asked the witness what would be the difference, in the effect upon a patient, in giving a grain of morphine at one dose or splitting it up in half grains and giving them half hour apart. The witness answered the effect would be practically the same; that the first dose would not have time to be absorbed by the system before the other was given. How this could have injured appellant is not made to appear, while, as we understand the record, there is no evidence that the morphine was so administered, yet the answer of the witness was of such character that in our judgment it could not have injured appellant, and as held in Lovelady v. State, supra, the failure of such an assumed fact would carry with it the failure of the answer based upon the fact, and could not under the circumstances here injure appellant. At least, it is of such minor importance that we would not feel justified in reversing the judgment for this reason, even if it was error.

The witness McWhorter was permitted to testify, over objection, what if anything did he hear appellant say about the deceased, etc. The witness answered that in Mr. Padons' yard a short time before the killing, appellant, in Will McWhorter's presence, said that if deceased did not live with him that she would not have the pleasure of living with any other man. It is contended that this is not a threat. We are of opinion that it is an indirect threat, and especially in view of this record. Appellant was jealous of his wife and they had been living apart and living together, and alternating in their separations and living together for sometime, and some of the troubles arose between appellant and deceased over what appellant supposed to be improper conduct between Will McWhorter and his wife.

There is also a suggestion that the court erred in admitting testimony to the effect that after the deceased was put to bed that the blood ran from her ear and from the exterior face of the wound down on her pillow in sufficient quantities to ooze through the pillow to the bottom side of it. We think this testimony was admissible, and had rather a pertinent bearing upon the seriousness of the wound, and especially as to that portion of the blood which came from the inside out through the ear.

Appellant requested some charges with reference to his intent in striking his wife with the pistol to the effect that if he did not intend to kill her at the time he struck her, that the jury would acquit of homicide, and that he would be guilty of no higher offense than aggravated assault. We are of opinion that the court's charge submitted

the issues of the case fairly under the evidence, not only as to the intent of the accused in striking with a pistol, but also as to his want of responsibility for the homicide if death occurred by means of administration of morphine.

We are of opinion that there is no such error in this record as would require a reversal of the judgment and it is therefore affirmed.

*Affirmed.*

Henderson, Judge, absent.