W. A. NEWMAN v. THE STATE.

No. 8196.   Delivered October 8, 1924.

Rehearing denied March 4, 1925.

**1.—Theft of Cattle—Insanity—Issue for Jury.**

. Where insanity is presented as a defense, the issue is one of fact for the jury to pass upon and as a general rule their findings will not be disturbed. The law presumes an accused to be sane. The burden to show the contrary by a preponderance of the testimony is on him.

**2.—Same—Evidence—General Reputation—Cross-Examination.**

It was permissible for the state on cross-examniation of a witness introduced by appellant, who testified as to the general reputation of appellant, to ask such witness if he had not heard that appellant had been accused or charged with burning his property in order to obtain the insurance. See Holloway v. State, 45 Tex. Crim. Rep. 303; 14 L. R. A. (N. S.) 792 note. Underhill on Crim. Ev. (3d Ed.), Sec. 141. Nothing in the present record indicates that the question was asked otherwise than in good faith.

**3.—Same—Evidence—Hypothetical Question—of an Expert.**

Where appellant introduces an expert witness, and propounds to him hypothetical questions on the issue of insanity, it is proper for the State on cross-examination of such witness to propound hypothetical questions in accordance with the state's theory, embracing matters revealed by the evidence. It is not necessary in such questions that state's counsel embrace all of the facts in evidence. It is only necessary that the examination be conducted in a fair and reasonable manner. See cases cited in this opinion.

**4.—Same—Insanity as Defense—Burden of Proof.**

Where insanity is presented as a defense, it is not necessary to prove that the accused is permanently insane. If his mind was so deranged at the time of the transaction, as to render him incapable of distinguishing between right and wrong, he was not responsible for his act. But the burden of proof is upon the accused to establish this contention by a preponderance of the evidence. See Roberts v. State, 89 Tex. Crim. Rep. 454.

**5.—Same—Insanity—Charge of Court—Special Charge—Properly Refused.**

Where the court in the main charge to the jury has correctly and fully presented the issue of insanity, as it was raised by the evidence, it is not error to refuse to give special charges requested by the appellant, even though such charges correctly present the law. The charge of the court given in this case or the issue of insanity is found in Wilson's Crim. Forms, 4th Ed., p. 522, and has received the sanction of this court in numerous cases. See Leach v. State, 22 Tex. Crim. App. 279; Webb v. State, 8 Tex. Crim. App. 115.

**6.—Same—Special Charge—Properly Refused.**

Where a special charge is requested which embraces an issue that is not raised by the evidence in the case, it is not error to refuse such charge.

**7.—Same—Special Charge—Hereditary Insanity—Properly Refused.** ·

Where insanity is an issue in the case, a special charge on the subject of hereditary insanity is properly refused, where such issue is not raised by the evidence.

Appeal from the District Court of Dickens County. Tried below before the Hon. J. H. Milam, Judge.

Appeal from a conviction of theft of cattle; penalty, two years in the penitentiary.

The opinion states the case.

*G. E. Hamilton,* of Matador, *Stinson, Coombs & Brooks,* of Abilene, for the appellant.

*Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

MORROW, PRESIDING JUDGE.—Theft of cattle is the offense; punishment fixed at confinement in the penitentiary for a period of two years.

The evidence makes it clear that the appellant, without the consent of the owner, took something over one hundred head of cattle belonging to the witness Beeman, under circumstances which justified the jury in the verdict rendered.

Appellant interposed the defense of insanity and introduced a number of non-expert witnesses upon this subject. Some of them gave the opinion, upon proper predicate, that he was insane; others that he was not ''at himself''. Two doctors were introduced by the appellant. They did not, however, give the opinion that he was insane. Upon that subject they were silent. Their testimony related to his family history and revealed the fact that he had two sisters who had become insane; that his brother was affected with epilepsy; that his mother was of very nervous temperament.

One of the doctors, on a hypothetical question, re -ting incidents favorable to the appellant which were detailed by t e various witnesses as a predicate for the opinion of insanity, said upon the hypothesis that if this testimony was true, that the appellant was, in the opinion of the doctor, insane. However, on a hypothetical question of a similar nature propounded by State's counsel, he gave a contrary opinion.

Beeman was the owner of a ranch and a number of head of cattle. Appellant had been in the employ of Beeman, in charge of his ranch, though before the prosecution began his relations had been severed. Beeman resided in another state. As we understand the record, while the ranch was in control of the appellant, he took possession of over 130 head of cattle, severed them from the others in the herd, gave them a separate mark and brand, and put them into a neighboring pasture with the intent to sell them. Learning of the loss of his cattle, Beeman had several conversations with the appellant, which were detailed. Appellant first took the position that his standing in the community was such that it would be useless to assail it; that he would make no statement touching the transaction. Subsequently, however, he proposed to reveal his connection with the transaction and the locality of the cattle if he could secure from Beeman the promise of immunity from prosecution. This was declined, however, but relying upon the belief that Beeman would not prosecute him, the appellant disclosed the facts and the cattle were recovered by Beeman.

Appellant had been engaged in many large business transactions, and the record embracing a mass of testimony showing his various transactions, conversations, conduct and demeanor is too voluminous to quote.

The issue of insanity was raised and submitted to the jury. Appellant insists that the proof of insanity was conclusive. In this we are not able to concur. His sanity was presumed. The burden to show the contrary by a preponderance of the evidence was upon him. The question was one of fact. Few of the witnesses gave the opinion that he was insane. All of them detailed facts which the jury might or might not have regarded as of sufficient weight to support the opinion given. In the light of these, they were called .

upon to weigh the opinions. Many of the acts detailed were entirely consistent with his sanity. The jury was not unwarranted in concluding that insanity was not proved.

Appellant having put in issue his general reputation for honesty and fair dealing, it was competent for the State's counsel to ask the witness who supported such good reputation, on cross-examination, whether he had heard that the appellant had been accused or charged with burning his property in order to obtain the insurance. Holloway v. State, 45 Texas Crim. Rep. 303; 14 L. R. A., (N. S.) 792, note; Underhill on Crim. Ev., 3rd Ed., Sec. 141. Nothing in the present record indicates that the question was asked otherwise than in good faith.

On cross-examination of an expert witness who had testified upon behalf of the appellant in response to a hypothetical question, State's counsel did not offend against the rules of evidence in putting to the witness, on cross-examination, a hypothetical question in accordance with the State's theory and embracing matters revealed by the evidence. It was not essential that in the question State's counsel embrace all of the facts in evidence. It is necessary only that the examination be conducted in a fair and reasonable manner, and that it was so conducted is implied by the sanction of the question by the trial judge, the contrary not appearing from the record. Lovelady v. State, 14 Texas Crim. Rep. 560; Burt v. State, 38 Texas Crim. Rep. 444; Underhill on Crim. Ev., 3rd Ed., Sec. 190; Owen v. State, 52 Texas Crim. Rep. 65; Davis v. State, 54 Texas Crim. Rep. 236.

Appellant insists that although he may not have been permanently insane, if his mind was so deranged at the time of the transaction as to render him incapable of distinguishing between right and wrong, he was not responsible for his act. This contention is sound, but the burden was upon the accused to establish this contention by a preponderance of the evidence. See Roberts v. State, 89 Texas Crim. Rep. 454.

The law of insanity was embraced in the eight and ninth para graphs of the court's charge, which we quote:

"8. The term 'insanity' as used in this charge, means that the mind of a person is in such an impaired and unsound state to such a degree that it overwhelms the reason, conscience and judgment that it deprives him of the knowledge of the right and the wrong of the acts done by him, and acts from an uncontrollable and irresistible impulse."

"9. Our statute provides that no act done in a state of insanity can be punished as an offense. You are, therefore, charged that if you should believe from the evidence, beyond a reasonable doubt that the defendant did commit the theft of the one head of cattle, as charged in the first count of the indictment, or if you should be-

lieve that the defendant did unlawfully mark, or brand the one head of cattle in controversy as charged in the third count of the indictment, if you should believe this from the evidence, beyond a reasonable doubt, but if you should further believe from a preponderance of the evidence that at the very time he committed the act or acts, if any, the defendant's mind was in an impaired and unsound state to such a degree that for the time being it overwhelmed the reason, conscience and judgment, and that the defendant acted from an uncontrollable and irresistible impulse, produced by such an impaired and unsound condition of the mind, that it deprived him of the knowledge of the right and the wrong of the acts done, then you will find him not guilty, and if you acquit the defendant on his plea of insanity, you will let your verdict state that you have done so.''

An exception was reserved to the eighth paragraph of the court's charge upon the ground that it is more onerous than the law demands. The language used in that paragraph is found in the charge of the court embraced in Willson's Crim. Forms, 4th Ed., p. 522, and has received the sanction of this court on a number of occasions. See Leache v. State, 22 Texas Crim. App. 279; Webb v. State, 8 Texas Crim. App. 115.

We have failed to perceive in Paragraph 9 any substantial departure from the charge submitting the issue of insanity which is recommended by Judge Willson in his Crim. Forms, 4th Ed., p. 519, and which has often been approved by this court. See Clark v. State, 8 Texas Crim. App. 350; Tubb v. State, 55 Texas Crim. Rep. 606; Miller v. State, 52 Texas Crim. Rep. 72, and other cases in the note under the form mentioned.

Against the charge of the court appellant makes the point that his special charge told the jury that it was not necessary that the insanity be permanent or that the accused be a ''raving maniac'' at the time of the commission of the act in order to absolve him; that it would be sufficient if it be shown that at that time he was insane. We have observed in the record no evidence which is regarded as demanding a charge specially upon the issue mentioned. The main charge instructed the jury that if at the very time the act was committed his mind was impaired to a degree that deprived him of the knowledge of right and wrong of the particular act, to acquit him. If there be evidence which rendered it error for the court to refuse the special charge, it has not been discovered or pointed out in the appellant's brief.

The special charge on the subject of hereditary insanity seems unsupported by the evidence. Its refusal was not error.

The judgment is affirmed.

LATTIMORE, JUDGE.—The motion complains of an erroneous decision on our part with respect to special charge No. 1 asked by the appellant and refused, and also of our holding that the general charge on insanity given by the court sufficiently presented the law applicable to the facts. We have carefully examined said special charge as well as the main charge, and the evidence relative to this issue. For us to agree with appellant's first contention would be to engraft upon our practice a departure from the generally approved and accepted forms of charges on insanity and to make necessary the giving of a charge in substance that it is not necessary that insanity should be permanent or that the person charged be a raving maniac at the time of the commission of the alleged offense, in order to absolve him from guilt. Appellant cites Montgomery v. State, 151 S. W. Rep. 816, as supporting his contention that this part of said special charge was couched in apt language and should have been given. Nothing in the opinion in that case commits this court to the adoption of that language, nor is its correctness discussed therein. The trial court in the instant case might have seen fit to give such charge, and we can see no objection to it, but are unwilling to hold that a case giving a generally correct charge on insanity, should be reversed because of the failure of the court to incorporate this language in it. From the facts in the case before us it appears that there was evidence showing insanity in appellant's family, but, as is clearly stated in the special charge asked by appellant and given,—this question is one peculiarly for the jury to decide from all the evidence in the case. A number of persons attested their belief that there was something wrong with appellant's mind and gave instances which formed the basis for their opinions, and others expressed their belief that he was insane at the time he took the cattle in question, but most of said witnesses would aver that during an extended acquaintance with appellant they had observed but few instances deemed by them to evidence mental unsoundness. The great majority of his acts as observed by them were not those of an insane man. The question for the jury was not whether appellant exhibited moments or instances of mental impairment, but what was his condition in that regard when he drove the 136 calves alleged to have been stolen, for many miles away from the ranch in which they were, aided in branding them and placing them in the pasture of another party. The first paragraph of said special charge presents an attempted grouping of facts as to heredity and strain which might be productive of insanity, which grouping should not obtain in our practice. The inevitable result of same either for or against the accused is a dangerous approach to getting on the weight of the testimony.

We have again examined the charge of the court on this subject, which is quoted in the original opinion, and find ourselves unable to believe that it was insufficient or that the jury could have misunderstood its statements of the law.

Regretting our inability to agree with appellant, the motion for rehearing will be overruled.

*Overruled.*