## C. B. JONES v. THE STATE.

No. 14521.   Delivered June 17, 1931.
Rehearing Denied December 23, 1931.

The opinion states the case.

*Jane A. Shaw,* of Oklahoma City, Okla., for the appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

MORROW, PRESIDING JUDGE.—The offense is murder; penalty assessed at confinement in the penitentiary for a period of thirty-five years.

The indictment is in order and properly presented. No irregularity in the procedure has been perceived or pointed out. There is no statement of the facts heard upon the trial, nor are there any bills of exception bringing forward any matter for review.

In entering the judgment and sentence, the court ignored article 775, C. C. P., touching the indeterminate sentence. The judgment and sentence are amended so as to condemn the appellant to confinement in the state penitentiary for a period of not less than two nor more than thirty-five years.

As reformed, the judgment is affirmed.

*Affirmed.*

ON MOTION FOR REHEARING.

CALHOUN, JUDGE.—In connection with his motion for rehearing, appellant filed a statement of facts which is now considered.

The facts of this case, briefly stated, are as follows: On the 24th of

January, 1931, there was a party given at the home of Mr. and Mrs. Oscar Yates in the town of Midland. Both the appellant and the deceased were in attendance at said party. The appellant accompanied to said party Miss Eula Gantt who had known him but a short time. They attended said party in company with her sister and Mr. Bennett and a Mr. Cox. It appears further from the testimony that the said Miss Gantt had danced about a half dozen times with the deceased during the night and had not danced at all with the appellant. During the course of the evening the appellant went to Miss Gantt and objected to her dancing with the deceased and told her he didn't like it and didn't want her to dance with that "damn jelly-bean"; that he talked to her several times concerning the deceased. The testimony further shows that there was some drinking going on at the party and that the appellant was also drinking. It seems that during the course of the evening the said Miss Gant left the house in company with Mr. Floyd and the deceased. They were gone approximately ten or fifteen minutes according to her testimony and when they got back to Mr. Yates' house, the appellant was sitting in an automobile outside the house. The shot fired which killed the deceased was fired in the kitchen. There were a number of people present at the time and immediately preceding the shooting a Mr. Osborne was talking to the sister of Miss Gantt when the appellant grabbed him by the collar and whirled him around and asked him what he meant by talking to "my boy friend's girl friend", and he replied, "What do you mean by whirling me around that way; I can protect myself against any man living, I think". The deceased and a man by the name of Cox were present and they walked up to where the appellant was, and the deceased said to him, "Let's not have any trouble, we are all friends". At that time the appellant took a few steps backwards and Cox grabbed him by the wrists and the appellant shoved him away. The shot was then fired which killed the deceased. The witness Cox testified positively that the shot was fired by the appellant.

The appellant's defense was insanity. There are no exceptions to the court's charge. Bill of exception No. 1 complains of the action of the trial court in permitting the witness, Miss Alberta Gantt, to answer, while she was on the witness stand, the following question: "Did you think it was a gun?" To which the witness answered, "Yes". It seems from the bill that Miss Alberta Gantt was present at the time of the homicide and the evidence showed that the witness Cox went up to the appellant immediately after the shooting and grabbed the appellant's hand. She testified that she saw the said Cox grab appellant's hand and fumble with his hand and saw him put something in his pocket but would not swear it was a gun, whereupon the state's counsel asked the witness the question complained of.

The witness, Cox, testified on the trial that when he did go up to the

appellant just after the shooting and grabbed hold of his hands that he did take a pistol away from the appellant. The court qualifies said bill by saying that the defendant objected but stated no ground of objection. In addition, the bill does not show in what way the appellant was prejudiced thereby. The testimony of the witness Cox was admitted without objection that he did take the pistol away from the appellant just after the shooting, and there was no issue made as to said fact. The bill does not show that it was prejudicial to the rights of the appellant, and there is no showing made in said bill that the evidence was not admissible upon some relevant issue in the case.

Bills of exception 2, 3, and 6 are objections to certain hypothetical questions propounded by the state's attorney to doctors introduced by the state upon the issue of insanity. The qualification of the bills shows that the doctors to whom the questions were propounded had qualified as alienists of mental diseases and that the said hypothetical questions objected to were based entirely upon the facts which had previously been testified to by the state's witnesses and by one of the defendant's witnesses, J. B. Bennett. The objections made to said hypothetical questions were that they were conclusions of the witnesses and irrelevant and highly prejudicial and not based upon the entire evidence offered upon the issue. The bills do not show the answer to any of the hypothetical questions, and we are therefore unable to say from said bills whether the answers to the said questions would have been favorable or unfavorable to the appellant. Under the decisions of this state, it is well established that where insanity is an issue "each side has a right to an opinion from the expert witness upon any hypothesis reasonably consistent with the evidence, and if meagerly presented on one side it may be fully presented on the other, being within the control of the court, whose duty it is to see that the examination is fairly and. reasonably conducted. In putting hypothetical questions, counsel may assume the facts in accordance with his theory of things, and it is not essential that he state all of the facts to the witness as they have been proved." See Branch's Annotated Penal Code, sec. 31, p. 18; Lovelady v. State, 14 Texas App., 560; Leache v. State, 22 Texas App., 307, 3 S. W., 539; Shirley v. State, 37 Texas Crim. Rep., 475, 36 S. W., 267; Burt v. State, 38 Texas Crim. Rep., 444, 43 S. W., 344; Morrison v. State, 40 Texas Crim. Rep., 494, 51 S. W., 358; Williams v. State (Texas Crim. App.), 53 S. W., 861; Squires v. State (Texas Crim. App.), 54 S. W., 771; Owen v. State, 52 Texas Crim. Rep., 70, 105 S. W., 513; Davis v. State, 54 Texas Crim. Rep., 242, 114 S. W., 366; Duke v. State, 61 Texas Crim. Rep., 441, 134 S. W., 707.

Bill of exception No. 4 complains of the action of the trial court in permitting the state, while appellant's witness, Dr. W. G. Whitehouse, was testifying in appellant's behalf, to ask asid witness if he didn't think

he should be able to classify what form of insanity the appellant had and if he did not think the man was a paranoyia. The bill itself does not show what answer the doctor gave to said question and does not give enough of the surrounding facts to show any error or any injury to the appellant.

Bill of exception No. 5 shows that while Dr. J. K. Wood was testifying in rebuttal testimony in behalf of the state, and after he had testified that he had made a physical and mental examination of the appellant and that he examined him as carefully as he could for any abnormal mental traits, characteristic delusions or hallucinations, the bill then shows as qualified that the state's attorney then asked the doctor to state whether or not he had asked him, appellant, any questions which required judgment on his part to answer, and the doctor answered, "His judgment was entirely normal on every question I asked him". The bill shows, as qualified, that no objection was made to that question and answer, but when the state asked the doctor to "give an illustrtaion of two or three questions asked appellant to show what you mean by judgment", the appellant excepted, but no grounds of objection were stated. The bill does not show what, if any, answer the doctor made to said question.

Bills of exception 7 and 8 complain of certain argument made by the attorneys representing the state in their discussion of the case to the jury. Both of said bills are qualified to the effect that said arguments and all of them were based entirely upon the record and were entirely within the record and the testimony upon which said arguments were based was not objected to by the defendant at the time the same were offered and admitted.

No error appearing in the record calling for a reversal of the case, appellant's motion for rehearing is overruled.

*Overruled.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.